ELIZA SIMMONS ET AL., APPELLANTS, VS. LEONIDAS W. SPRATT, APPELLEE.

| | |
|---|---|
| 20 | 495 |
| 35 | 605 |
| 20 | 495 |
| f41 | 258 |
| 20 | 495 |
| 44 | 239 |
| 44 | 565 |
| 20 | 495 |
| 52 | 254 |
| 20 | 495 |
| f53 | 337 |
| 20 | 495 |
| f58 | 166 |

1. The general rule is that if a deed purport to have been executed under a power, either of a public or private character, or by the officer of a court under a decree, and it is sought to use the deed in evidence, the power should be shown, and in case of deed under a decree the party offering the deed should introduce a transcript of the record of the decree.

2. Where, however, such deeds purporting to be executed by executors under the powers of a will and orders of the probate court, and by a master in chancery under a decree in chancery are offered and placed in evidence without objection in the Circuit court, it is too late to object in the Appellate Court that neither the will, the order, nor the decree authorizing the sale or the disposition made by the deed was introduced.

3. Independent of the statute (McC. Dig., 515) prescribing how official papers or certified copies thereof may be used in evidence, the rule is that every document of a public nature, which there would be an inconvenience in removing and which the party has a right to inspect, may be proved by a duly authenticated copy. The official character of the record, however, must be shown. Where a paper is proposed to be introduced as a copy of a public survey by a public officer authorized to make it, it is necessary to show something more than that such a survey, purporting to have been made by a person not shown or purporting to be a public officer, was simply copied from the original found in a public office.

4. Where the courses and distances in a deed do not cover the quantity of land called for and are therefore uncertain as boundaries, and there are other boundaries given in the deed by adjoining tracts

which are ascertained and sufficiently established, the lines will be extended to them where such a course is consistent with the manifest intention of the parties. Hogans vs. Carruth, 19 Fla., 84, cited and followed.

5. An adverse possession of land under claim of title of less than seven years does not bar the right of action of the true owner or his grantees. Where the defendant in ejectment is in actual possession, the plaintiff cannot recover where he fails to show legal title in himself or that he was a prior actual occupant ousted by the defendant.

6. If the intended grantee in a deed is not named he should be ascertained by description so as to be distinguished from all others. A deed which sets apart, distributes and conveys " a lot of land to the estate of Daniel W. Hart," Daniel W. Hart being dead, does not pass the legal title to his niece, his devisee under his will entitled to his estate, and a purchaser of the interest of the devisee of Daniel W. Hart in such lot acquires no legal title.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Geo. Wheaton Deans* for Appellants.

*A. W. Cockrell* for Appellee.

Mr. Justice Westcott delivered the opinion of the court.

This is an action of ejectment by Spratt against Eliza and William Simmons to recover possession of and to establish his title to lot 2, block 134, in the City of Jacksonville, according to " Hart's map of said city."

After trial and verdict for plaintiff, and after motion to set aside the verdict and for a new trial by defendants overruled, there was judgment that the plaintiff " recover an estate in fee of " the lot. From this judgment defendants appeal upon exceptions taken during the trial, and to the action of the court in overruling the motion to set aside the

verdict and for a new trial. To the various deeds, to the will of Daniel W. Hart, and to the deed of Judson W. Whitney, Special Master in Chancery, introduced in evidence by the plaintiff during the trial, no objection was made. As to these papers the bill of exceptions recites that the plaintiff produced and proved, severally, the due execution of the original deeds; that he offered and put the same in evidence, and that no objection was offered thereto.

The first point to which our attention is called, in appellants' brief, is that the deed of the lot from Judson W. Whitney to plaintiff purporting to be his deed as a special master under a decree of a court of chancery fails to show any title in plaintiff because " neither the decree referred to, if there ever was one, nor any copy of any such decree was produced and offered in evidence at the trial, and none appears in the record of the proceedings filed in this court."

The general rule upon this subject is, that if a deed purports to have been executed under a power either of a private or public character, or by the officer of a court under a decree and it is sought to use the deed in evidence, the power must be shown, or in case of a decree the party offering the deed must show the proceedings upon which the decree authorizing the deed was founded. 1 Greenleaf on Ev., 511 ; Emerson vs. Ross, 17 Fla., 125. The practice, however, in this State is that if such deed is admitted in evidence without objection by the defendant in the Circuit Court, the party cannot, upon appeal, raise the objection here for the first time. Under such circumstances the question here presented is, whether admitting the deed to be duly executed under a legal decree and in conformity with the will the verdict was contrary to the evidence unless there be ground of exception and reversal

other than those arising out of the deed.    Emerson vs. Ross, 17 Fla.., 125.

The objection made here for the first time, that the deed of the executors of I. D. Hart purporting to convey and distribute the estate of I. D. Hart under an order of the Probate Court and in accordance with the will of the testator was inadmissible, is of the same character as that just disposed of.    The defendant here could have insisted upon the production of the proceedings in the Probate Court and of the will had he seen proper so to do upon the trial, but having failed to do so in the Circuit Court at the trial when the defect might have been remedied he will not be permitted to profit by his own neglect in this respect there upon his appeal here where the defect cannot be supplied. We do not mean to say that the recitals in this deed are binding upon those who claim by title paramount to it or against it, but simply that proof of the decree, order and will is waived by not insisting upon it.

The next objection of the defendants to the action of the Circuit Court, which we are asked to review here, is refusal of the court to permit a certified copy of the field notes by David H. Burr of the survey of the claim of Z. Hogans, referred to by several of the witnesses, to be put in evidence.    To this action the defendant excepted.

M. Martin, signing as Surveyor-General of the United States for the State of Florida, certified that "the foregoing field notes and plat of the claim of Z. Hogans in township 2, south of range 26, east, have been carefully copied from the originals on file in this office."

Plaintiff insists that no provision is made in the statutes of this State for the admission of this paper in evidence. It is true that none of the statutes of this State contain a provision making this paper evidence.    This, however, does not settle the question, as the plaintiff here seems to

think as he confines his argument to that point. . Independent of this statute the rule is " that every document of a public nature, which there would be an inconvenience in removing and which the party has a right to inspect, may be proved by a duly authenticated copy." This is the rule announced by some of the text writers on evidence. 1 Greenleaf on Ev., §484; Gresly on Ev., §115.

The statute does not propose to abolish or change the rule. The official character of the record must be shown however. In the present case there is no evidence that the party making this survey was an officer of any kind. The certificate of the Surveyor-General simply states that the field notes and plat have been carefully copied from the originals filed in his office, and the simple filing of a private survey in a public office does not make it evidence of the facts it recites or of the acts purporting to have been done. There is no evidence here that Burr was authorized or required to make this survey in discharge of a public duty under oath ; (Ellicott vs. Pearl, 1 McLean, 212 ; s. c., 10 Pet., 188 ;) or in any other capacity which would make a certified copy of it evidence. Again, it is to be remarked that the certificate of the Surveyor-General is not that the paper is a true copy of the original. The certificate should be that the paper is a true and correct copy of the original on file his office, and not that it has been " carefully copied from the originals on file " in his office. Whether this in itself would be a fatal objection we do not say. We simply call attention to the want of conformity to the strict rule upon the subject. There may be other objections to this paper, but those above stated, not including the nature of the certificate, were certainly sufficient to justify its exclusion when its admission in evidence was objected to.

The next question which arises upon exceptions by the defendant and appellant is whether the court erred in refus-

ing to set aside the verdict and grant a new trial upon the ground that the finding of the jury was contrary to the law and evidence. This involves a general review of the evidence and the case.

Plaintiff claims his title through I. D. Hart, and Hart's title is derived from the owners of the Hogan's Grant and Donation, as they are shown to exist in the opinion rendered in the case of Hogans vs. Carruth, 19 Fla., 92. So far as the question of Hart's title is concerned here there are no questions of law involved in its consideration, and the questions arising upon the evidence are simply as to the credibility of witnesses. From the evidence of plaintiff's witnesses the jury under the law of boundaries as fixed by the case of Hogans vs Carruth, 19 Fla., 84, had a right to conclude that the Hogans Grant and the Hogans Donation were coterminus, and that lot 2, block 134, was embraced in the tracts of land entered upon by I. D. Hart and embraced in the deeds of conveyance held by him. I. D. Hart, or those claiming under him, had constructive possession of this land from 1834 or 1836, for at least thirty-eight years. The title under which defendant's possession is attempted to be upheld proceeds from C. F. Smith. Smith, with no apparent right from any source, so far as this record discloses, on the 10th of January, 1874, presumed to make a deed of this lot to C. L. Robinson. C. L. Robinson and wife, on the 31st of March, 1876, conveyed the lot to William L. Seymour, Robinson's brother-in-law. He, Robinson, as the agent of his brother-in-law, then leased it to Lindsey for three years, after which Robinson rented it to Brown. Brown died and his wife married Simmons, the defendant, who with his wife was in possession at the institution of this suit.

The evidence as to the actual possession of this lot, is as follows: C. L. Robinson testifies that he had a fence put

around the lot in 1874, as the agent of C. F. Smith.   How long this fence remained is not disclosed.   After stating the sale to Seymour, (which was in 1876,) Robinson says that he fenced the lot in, and that " the fence remained for a long time, until it was picked away by the neighbors for fuel ;" that he then leased it to Lindsey for three years and he removed the fence.   As to when Brown, who leased the land after the expiration of the lease to Lindsey, went into possession he does not state.   All that he says is that after Brown died and his wife married Simmons the defendants occupied the lot.

William Caulk testified that immediately after the deed of distribution was given, (June 1, 1866,) he took the lot in charge, paid taxes on it, and controlled the lot in 1877; that he set posts on lots one and two, in block 134 ; that no one was in possession then ; that sometime thereafter he saw a house going up on it by a colored man; that he inquired what he was doing, and he said that Mr. Robinson told him to improve it.   He states further that the colored man consented to hold under him.   This witness says: "I have been in possession of the lot in controversy, and indeed of block 134.   The corner post I put there is there yet, or was there the last I saw of it.   I went in possession for Lulu Dearing by reason of a division of land of I. D. Hart of a document I hold in my hand.   Lulu Dearing was the niece of D. W. Hart, and he made her his heir and devisee in his will.   D. W. Hart was the son of I. D. Hart and his heir, and this particular lot fell to the share of Lulu Dearing in distribution and many other lots, and I held it in possession until the foreclosure of the mortgage executed by Lulu Dearing and her husband."

The sale under the mortgage was on the 6th of January, A. D. 1879.   This action was instituted in A. D. 1883. This is a period of four years.

There are other witnesses whose testimony conflicts with these statements of Caulk, but as we have had occasion to say before in this opinion, and to decide in many other cases, it is within the province of the jury to believe Caulk's statements rather than the testimony of the other witnesses.

Independent of the question as to what constitutes " a claim of title exclusive of any other right," or a claim of " title founded upon a written instrument " under our statute of limitations (Chap. 1869, Laws), there is no possession here, adverse or otherwise, for such a period as is necessary to bar the right of action of those in whom the legal title is vested. That period is seven years. No more than four years can be claimed under this testimony. The defendants here have no more than the right which results from simple actual present possession of the lot.

We have seen that the title to this lot is shown to have been in I. D. Hart.

Spratt, the plaintiff, claims that he has this title. As proof of it he places in evidence what is called a deed of distribution by I. D. Hart's executors, under which he claims that Daniel W. Hart, a son of I. D. Hart, acquired this lot, the will of Daniel W. Hart under which he claims the title passed to Lulu J. M. Dearing, Hart's niece, and the deed of Judson W. Whitney, Special Master in Chancery, under which he claims that he acquired the interest and title of Lulu J. M. Dearing. Spratt neglects here to put in evidence the will of I. D. Hart and the proceedings in the Probate Court authorizing the distribution of his property and also the proceedings in the suit against Lulu J. M. Dearing, which was a suit to foreclose a mortgage of Lulu J. M. Dearing upon said lot.

The deed of the executors of I. D. Hart is dated June 1,

1866. The executors by it "sets apart, distributes and conveys *unto the estate of Daniel W. Hart*" this lot.

It appears from the testimony of Caulk that Lulu Dearing was the niece of Daniel W. Hart, a son of Isaiah D. Hart. Under the will of D. W. Hart she was entitled to all of his property except a gold-headed cane. It further appears from the deed of the master to Spratt, and the testimony of Caulk, that the land embraced in this suit was embraced in the mortgage "executed by Lulu Dearing and her husband," and sold to Spratt under the foreclosure proceedings. The remaining question, therefore, as to title shown is whether plaintiff proved title in Daniel W. Hart, because, if so, the testimony of Caulk, to which there was no objection, must be held to identify the land in question as being devised by Daniel W. Hart to Lulu Dearing, whose interest passsd to Spratt under the sale. The question, therefore, is whether Daniel W. Hart or his devisee took such an estate under what is here called the deed of distribution of the executors of I. D. Hart as can sustain an action of ejectment.

The deed of the executors which covers this lot of land is dated June 1, 1866. The executors by the deed "sets apart, distributes and conveys unto the estate of Daniel W. Hart" the lot in controversy. It is recited in the deed that the executors had been authorized by the Judge of Probate to sell the vacant town lots in Jacksonville belonging to the estate for the purpose of paying the debts of the deceased and distributing "the estate more equally among the legatees," a sale after due advertisement, of sixty-five lots to persons other than legatees, and that the rest of the property was bid in by and for the legatees and by the executors for and in behalf of said estate; that the conditions of the sale had been complied with; that a final decree and order to said executors dated 18th January, 1866, was made

to make distribution among the legatees and others entitled under the said will."

The question is, does a deed of conveyance by the executors of I. D. Hart, who, under his will and an order of the court, are authorized to distribute I. D. Hart's estate, conveying and setting apart this lot to the estate of Daniel W. Hart, vest such title in the devisee of Daniel W. Hart who alone under the terms of his will could acquire it as would enable such devisee to maintain ejectment. It is insisted that these terms passed no estate ; that the legal title here is still in the executors of I. D. Hart, if it was there before this deed. The description of the grantee as " the estate of Daniel W. Hart " in this deed of conveyance by the executors we think is too vague and uncertain to constitute a competent grantee at law.

The rule is: "If the intended grantee be not named, he should be ascertained by description so as to be distinguished from all others, and any uncertainty in this respect will render the grant void." Thomas vs. Mansfield, 10 Pick., 366. Here there is no grantee by name or otherwise and no reference to the will of D. W. Hart is made. There are some cases which make such a deed effective to pass title to the administrator where he takes the title of the intestate, but we do not think this a parallel case.

The greatest extent to which the courts have gone in the matter of ascertaining the grantees in an uncertain deed is to permit extraneous evidence to be given to ascertain to whom such description is meant to apply when such evidence can explain the plain uncertainty, but at the same time accomplish a manifest intention. In the case of Webb vs. Den., 17 How., 579, the deed was to " the legatees and devisees of the late Anthony Bledsoe." This language necessarily restricted the grantees to such persons as took under the will. The court held that by this description

the deed necessarily referred to the will to ascertain who were such devisees, that it thus far incorporated it, and that it contained therefore a sufficient description of the grantees. Here we are without the most remote reference to the will of Daniel W. Hart or anything by which it can be contended that his niece, Mrs. Dearing, was the grantee in the deed of the executors. Nor is the will of Isaiah D. Hart in evidence to identify his legatees or devisees. See the cases on this subject collected in Martindale, on the law of conveyancing, §§69, 70.

The grant here is to an estate, but what that means or what is intended is nowhere defined, and the executors connect nothing with their description by way of reference to enable identifying evidence to come in. We cannot say that the word estate refers to the devisee under Daniel W. Hart's will, because there is nothing here to connect the deed and the will, as was the case in 17 How., 579. To do so here is to arbitrarily supply a missing link in no manner referred to in the deed and act of the grantees, the executors. The fact is that independent of the will here, and looking only to the deed, we could not know whether Daniel W. Hart's niece had any interest in his property or not, or that he ever had a niece or a wife or a child, or that he made a will.

Spratt having acquired no legal title to this land under his mortgage purchase, for want of legal title in the mortgagor, the next question is whether he acquired any rights by virtue of Mrs. Dearing's possession. These at least passed to him under the sale if she had any possessory rights.

The possession of Mrs. Dearing, or of Caulk, her agent here, was not a possession under color or claim of title. There was no conveyance to her or her uncle, and there was no legal title or claim of title by deed. There was simply

the possession, as to which Caulk testifies. He says he paid taxes on the lot ; that he set posts on it in 1877 ; that no one was in actual possession then ; that sometime thereafter he saw a house going up on it by a colored man ; that he inquired what he was doing, and he said that Mr. Robinson told him to improve it, and that the colored man consented to hold under him. How long this colored man remained in actual occupancy, or that he is the present occupant, is not shown, and there is no evidence showing that the defendants now admitted to be in possession entered upon the occupancy of any one. There are circumstances under which a prior simple occupant without legal title and his grantees in possession have a right to eject a subsequent occupant or his grantees. Now, the defendant's entry here was without title or authority to enter under the title. So far as this record discloses, the title was and is where it was under the will of I. D. Hart. The plaintiff fails to show that he or his grantees, or those whose interest he acquired under the mortgage purchase, was in actual possession of the land when defendants or those under whom they claim entered. The prior possession here contemplated must have been an actual possession. Some of the authorities say "an open, notorious and actual possession." Seymour & Simpson vs. Creswell *et al.*, 18 Fla., 41, and cases there cited. The rule is that a wrongful ouster gives no title against an actual occupant without title. The evidence does not disclose such an ouster here.

The judgment is reversed and a new trial will be awarded.