THE TAMPA STREET RAILWAY AND POWER COMPANY, APPELLANT, VS. THE TAMPA SUBURBAN RAILROAD COMPANY, APPELLEE.

1. An appeal from an interlocutory order, decision, judgment or decree of a Circuit Court sitting as a court of equity will not operate as a supersedeas unless the judge of the Circuit Court, or a justice of the Supreme Court on inspection of 'the record, shall think fit to order and direct a stay of such proceedings.

2. No supersedeas, whether granted by the Circuit Judge or a justice of the Supreme Court, from an interlocutory order or decree, in whole or in part, other than for a money judgment, shall operate to suspend the order or decree appealed from until the giving of a bond with two good and sufficient obligors in such amount and conditioned as may be determined by the Circuit Judge.

3. A supersedeas will not be vacated where it appears that the damages which may result to the appellee by reason of the granting thereof are such as can be compensated in money, unless the appeal is frivolous; that is, unless the points of error suggested by an inspection of the record are so plain as to require no argument to show their untenableness. The rule declared in Williams vs. Hilton, 25 Fla., 608, 6 South. Rep., 452, is correct for the class of cases of its kind.

4. The action of a Circuit Judge in approving the sureties of a supersedeas bond as to the condition of the sureties then existing will be conclusive, unless it is made to appear that the condi-

tion of the sureties at the time of the approval was misrepresented to the judge, and that his approval was obtained in a manner that will amount to a fraud.

5. The approval of the sureties on a supersedeas bond, as well as the granting of the supersedeas itself, is an *ex parte* proceeding, but the personal presence of the appellee by himself or attorney will not prevent him from showing to the appellate court that the approval was fraudulently obtained.

Appeal from the Circuit Court for Hillsborough county.

Motion to vacate Supersedeas.

*P. O. Knight* and *Wall & Wall* for the Motion.

*S. M. Sparkman* and *MacFarlane & Pettingill*, contra.

MABRY, J.:

The first ground of the motion to vacate the supersedeas "because it adjudicates matters not complained of in the bill, and which do not appear in the pleadings," demands no consideration. Counsel do not rely upon it in discussing the motion here; and if by it is meant that the court deviated from the issues presented by the pleadings in adjudicating the contempt matters, it is clear that the appellant company has not appealed from this portion of the order, and has not obtained any supersedeas in reference to it.

The second and third grounds of the motion may be considered together, and they present the question whether or not the cause is such as to entitle the appellant to a supersedeas. The appeal is from an order dissolving a temporary injunction or restraining order previously granted, and not from a final decree. Looking to the order appealed from, it is certain that it is not for the payment of money, as the restraining order was against the further construction of a line of railroad in the streets of the city of Tampa, and the dissolution of this order is the matter brought up by the appeal. We then have a supersedeas from an interlocutory order, not for the payment of money, but for the dissolution of a temporary injunction against doing certain things. Of course, an appeal can be taken from an interlocutory order made in a chancery cause. Rev. St. §1457. In subdivision 2, §1458, Rev. St., it is provided that "no appeal from an interlocutory order, decision, judgment, or decree of a Circuit Court, sitting as a court of equity, shall operate as a supersedeas, unless the judge of the Circuit Court, or a justice of the Supreme Court, on inspection of the record, shall think fit to order and direct a stay of proceedings. No appeal so allowed shall operate as a supersedeas, except on the conditions prescribed by law in cases of appeals from final decrees." The conditions prescribed in cases of appeals from final decrees, in addition to the allowance of the supersedeas by the judge after the expiration of the time allowed to per-

fect the same as of course, are the giving of bond and security as provided in cases of writs of error. It is provided in the writ of error statute, in reference to supersedeas bonds, that if the judgment appealed from is, in whole or in part, other than a money judgment, the amount and condition of the bond shall be determined by the court below. Rev. St., §1272. The order appealed from in the present case is not for the payment of money, and hence, under the statute, can be said to be a decree other than for the payment of money. It is also clear, we think, that the damages which may result to the appellee by reason of the supersedeas are such as can be compensated in money. The Circuit Judge granted the supersedeas, fixed the amount of the bond, and approved the securities, in the case before us. For appellee, it is contended that the appeal is frivolous, and the supersedeas should not have been granted. For appellant, it is insisted that the appeal is not frivolous, and that in case of an original application for supersedeas, if the court or judge can see that the damages likely to result therefrom can be compensated in money, and the appeal is is not frivolous, the practice is always to grant it; and for a much stronger reason will the appellate court refuse to vacate a supersedeas granted by a Circuit Judge, before whom the entire matter was brought and fully argued. The case of Saxon vs. Gamble, 23 Fla., 408, 2 South. Rep., 664, is cited by counsel as authority against the motion. In this case the then Chief

Justice of this court granted a supersedeas on an appeal from an order setting aside a final decree, and it was contended in behalf of a motion to vacate the supersedeas that it was not such an order as justified the writ. In the opinion disposing of this motion, it is said: "It is not necessary or proper for a justice, on application for supersedeas to consider the merits of the appeal; and therefore we do not consider whether the judge could legally make such an order." In Williams vs. Hilton, 25 Fla., 608, 6 South. Rep., 452, it is said that the justice granting the supersedeas "is not to satisfy his mind on litigated questions, but only to see that there is an appeal; that it is not frivolous; and that the state of the case, as to its future course, is such as to render a stay of proceedings proper." This is declared to be the meaning of the court when it used the language quoted in the Saxon-Gamble case. The rule stated in the case of Williams vs. Hilton must then be taken to express the view of the court on this subject in the character of cases covered by it. It is further to be noted that in this case an appeal has been taken from an order dissolving an injunction, and the damage to result from the supersedeas was of such a character as to be compensated for in money. The case of Jacoby vs. Shomaker, 26 Fla., 502, 7 South. Rep., 855, was an application for a supersedeas in the appellate court, in a case where the damage likely to result from such a stay could not be compensated in money, and it was refused. Here it was dis-

tinctly stated that, "where the damage which may result from a supersedeas to a decree is of such character that it can be compensated in money, a supersedeas will be granted, if the appeal does not, upon an inspection of the record, appear to be frivolous; or in other words, if the points of error suggested by the record are not such as require no argument to show their untenableness." The rule stated in Williams vs. Hilton is said in this case to be correct for the class of cases of its kind.

The Revised Statutes authorizing a judge of the Circuit Court, or a justice of this court, to grant a supersedeas from interlocutory orders or decrees, is the same, in effect, as the act of 1853, under which the foregoing decisions of this court were made. The rule therein announced as to frivolous appeals is the one to be applied to the case before us; and if, upon an inspection of the record, the points of error therein suggested are so plain as to require no investigation, or, as expressed in Jacoby vs. Shomaker, are such as to require no argument to show their untenableness, the supersedeas will be vacated. A brief reference to the case will reveal the nature of the points of error to be passed upon by this court: The Tampa Street Railway & Power Company, appellant, in its bill for an injunction represents itself as a corporation existing under the laws of the State of Florida, and claims a right to occupy the streets of the city of Tampa with street-railway tracks, by virtue of a charter granted by the

Legislature of the State to the Tampa Street Railway Company, and the acquisition of the rights and franchises of this company on the part of the appellant, by purchase, some time in June, A. D., 1892. The grounds upon which appellant seeks to enjoin the occupancy of the streets of said city, or some of them, by the appellee, with parallel and competing lines of street railway, are:

First. That appellee was organized under the general railroad incorporation act of the State of Florida, for the purpose of constructing and operating a railroad from some point in Manatee county, Florida, to the city of Tampa, and thence to some point or points beyond the limits of said city, and to carry on a general steamship, railroad, and real estate business, and that under said charter said company was not authorized to construct and operate street railway tracks in the streets of said city.

A second ground for the injunction is that appellee represented to the city council of the city of Tampa that it had been incorporated for the purpose, and had the right, with the consent of said council, to construct and operate a line of street railway in said city, and upon such representations obtained permission of said council for this purpose; that three members of the said city council were, at the time the permit was given, directly interested in said petitioning company, as stockholders or otherwise, and they voted for the

permit. It is also alleged that prior to granting the permit to said company the city council of the city of Tampa passed an ordinance regulating the construction and operation of street railways in said city, and it is charged that said ordinance was drawn, introduced, and its passage procured, by the agents of said company, sitting as members of said council, for the purpose of giving to said company superior rights and facilities in the streets of said city over other street railway companies, and especially over appellant; and that said ordinance was passed by a vote of six councilmen in favor of it, and three against it, and three of those who voted for it were the three members directly interested in said company as stockholders, or otherwise, and said ordinance is null and void.

A further allegation is made in the bill for injunction, that the proposed construction of the said parallel and competing line of street railway in the streets of the city of Tampa by appellee will result in great injury to the rights, franchise, and property of the appellant company, and will decrease its revenues, and partially deprive it of the value and usufruct of its franchise.

It is conceded in the answer that the appellee company was incorporated, under the laws of Florida, to carry on a general railroad, steamship, and real estate business in the counties of Manatee and Hillsborough, and that its line of road should commence at some point in Manatee county and extend to the city of

Tampa, and thence to Tarpon Springs, in the county of Hillsborough. It is alleged, by way of denial, that two of the three members of the city council that voted a permit to appellee to lay its tracks in the streets of said city, and charged in the bill to be stockholders interested in said company, were not at the time such stockholders, or interested in said company, and that the third one did not vote for said permit.

It is also alleged in the answer that, if any damage result to the complainant company by reason of the construction of defendant's said road, it will be *damnum absque injuria.* Other allegations are made, but the foregoing reveal enough to disclose the character of some of the questions presented.

It cannot, in our judgment, be said that the right of the appellee company to construct and operate a system of street railways in the streets of the city of Tampa, under its charter, as exhibited to us, is so plain as to require no argument to show it. The question is not one of an assault upon the corporate existence of the company, but whether or not it has the authority, under its charter, to do what is proposed to be done. Neither are we prepared to say that the further question, the right of the appellant to call in question the authority of appellee to construct said street railway, is so clear against said right as to require no argument or discussion. We are not to stop on this inquiry, and satisfy our minds fully on these points which are presented by the record, but simply to see, from an inspection thereof, that they are not so plain as to require no argument to establish them. In

JUNE TERM, 1892.          409

Tampa St. Ry. & P. Co. v. Tampa Sub. R. R. Co.—Opinion of Court.

view of the questions presented, we cannot say that the appeal is frivolous, within the meaning of the rule on this subject.

The other grounds of the motion relate to the supersedeas bond, and may be considered under the one objection, that " the sureties on the bond are not worth each the sum of $10.000, in visible property in the State of Florida, over and above his legal liabilities and exemptions." The amount and condition of the bond, in a case like this, must be determined by the court below ; and the statute requires that it shall be executed with two good and sufficient obligors, to be approved by the judge or clerk of said court. The judge has approved it in this case. Counsel for appellant have filed an affidavit stating that appellee was represented before the judge, by counsel, both at the granting of the supersedeas and the approval of the securities on the bond. The affidavit discloses the fact that appellee, by counsel, objected to the supersedeas and to the sureties, but offered no evidence as to their insufficiency, nor asked for time in which to do so. Under the statute, the granting of the supersedeas, as well as the approval of the securities, is an *ex parte* proceeding. No notice of the judge's action as to either is required, nor is there any provision for a hearing of the opposite side in such proceedings. Whether an appellee be present or not, the statute has conferred upon the judge the authority to fix the amount of the bond, as well as to approve the sureties ; and, when he acts in such matters, it will be presumed that he had before him all the facts essential

410 SUPREME COURT.

Tampa St. Ry. & P. Co. v. Tampa Sub. R. R. Co.—Opinion of Court.

to a right and proper exercise of the power thus conferred upon him. His action, then, in the approval of the sureties, as to the then existing condition of affairs, must control, unless a fraud, or that which is tantamount thereto, has been practiced in securing his approval. This rule will not prevent action, on a proper application, by the appellate court, where the condition of the sureties on the bond has changed, or where there are other changed conditions in reference to the case since the approval of the bond. But unless it can be made to appear that the true condition of the sureties, existing at that time, has been misrepresented to the judge, or that his approval has been obtained, in respect thereto, in a manner that will amount to a fraud in law, his action is conclusive. Jerome vs. McCarter, 21 Wall, 17 ; Martin vs. Hazard Powder Co., 93, U. S. 302; Railroad Co. vs. Schulte, 100 U. S. 644 ; Williams vs. Claflin, 103 U. S. 753. It may be stated as a rule that when a judge approves the sureties on a bond, upon representations that they are worth the amount of the bond over exemptions and liabilities, and such representations are shown not only to have been false, but of such a character as to affect the material condition of the sureties to such an extent as to make it apparent that the judge would not have approved the bond had the true conditions been shown, it will amount to a fraud, and a supersedeas based upon such a bond will be vacated. In Hays vs. Todd, 26 Fla., 214, 7 South. Rep., 851, a motion was made to vacate a supersedeas on the ground of the insufficiency of the sureties ; and the testimony raising seri-

ous doubts as to their sufficiency, and no evidence be-. ing offered to remove such doubts, the motion was sustained. This case comes within the rule we have announced. Nor do we think that the personal presence of the appellee at the approval of the bond, and his objecting thereto, will prevent him from showing to the appellate court the condition of the sureties at that time, on a motion to vacate the supersedeas on account of the insufficiency of the sureties. What was represented to the judge at the time of the approval of the bond will be material, of course, in deciding whether or not a fraud was perpetrated in obtaining the approval. The bond approved by the judge in the case before us was signed by two sureties, J. H. Ahern and W. S. Walker ; and they justified that each "has sufficient visible property in the State of Florida, unincumbered, and not exempt from sale under legal process, to make good the sum of money for which he has become surety in the foregoing bond."

Counsel for the Tampa Suburban Railroad Company, appellee in the proceeding before us, have produced the affidavit of E. S. Douglass, the general manager of said company ; and he therein deposes and says that J. H. Ahern, one of the sureties on said appeal bond, "is not worth, in visible property, nor any other property, within the State of Florida, in the sum of one thousand dollars." A certificate from the Tampa Abstract Company, of Hillsborough county, bearing date the 16th day of September, 1892, is also produced, showing that the following real estate is all

412 SUPREME COURT.

Tampa St. Ry. & P. Co. v. Tampa Sub. R. R. Co.—Opinion of Court.

that the records of said county show to be in the name of James H. Ahern, to wit; Lot 5, block 18, lots 4, 5, 6, and 7, block 1, and lots 8, 9, and 10, block 20, in Collins' subdivision of S. E. ¼ of N. E. ¼, section 23, township 29 S., range 18 E. ; lot 15, block 6, lot 10, block 3, and lot 5, block 2, in Sevier's subdivision, lot 10 of Donovan's subdivision, of S. W. ¼ of section 7, township 29 S., range 19 E. ; N. W. ¼ of N. E. ¼, section 14, township 29 S., range 20 E. ; N. E. ¼ of S. E. ¼, section 8, township 30 S., range 21 E. ; 2 acres S. E. corner of lot 1, in section 3, township 30, range 18 E. W. H. Beckwith makes an affidavit that he is a real estate dealer in the city of Tampa, and is acquainted with the value of the above described real estate, mentioned in the certificate of the abstract company, and that its aggregate value does not exceed $2,800, on which there is a mortgage of $400.

Counsel for appellant produce the affidavit of the bondsman, J. A. Ahern, who says that he "is the owner of $13,000 of bonds and $50,000 of stock of the Tampa Street Railway & Power Company; that he also owns 9 city lots in the said city of Tampa, 40 acres of land in the town of Seffner, Fla., 40 acres of land near the town of Bloomingdale, Fla., and several other pieces of property in Hillsborough county, Florida." F. P. Seffner and John Franz depose and say that they reside near, and are acquainted with the value of, N. W. ¼ of N. E. ¼ of section 14, township

29, range 20 E., and one of them places its value at $1,600, and the other at $2,000. E. P. Ahern, brother of J. H. Ahern, the bondsman, makes an affidavit that his said brother, at the time of making the affidavit, 25th of October, 1892, was the owner of the following pieces of property, the deeds to same being in the custody of affiant, to wit: N. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, section 14, township 29, range 20, E.; N. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ of section 32, and the N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of section 33, all in township 28, range 19 E., and a strip 86 feet wide and 800 feet long on the north side of N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, said section 33; the last piece is alleged to have been bought about the 1st of October, A. D. 1892, for the sum of $5,000; and also the S. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, and N. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, of section 26, township 28, range 19, E., which it is alleged was purchased by said J. H. Ahern, in the year 1890, on the installment plan, and that he has made all the payments thereon except the last one, of $116.25, which is not due, and for that reason he has not yet received a title to the same.

Counsel for the motion produce a further affidavit from deponent Douglass, to the effect that the Tampa Street Railway Company cost, to build and fully equip, up to the 1st day of June A. D. 1892, including all of its real estate, not over $45,000, and the cost of the Tampa Electric Light & Power Company, including its real estate, up to said date was $55,000; that on said date said companies were consolidated

414 SUPREME COURT.

Tampa St. Ry. & P. Co. v. Tampa Sub. R. R. Co.—Opinion of Court.

and sold under the name and style of the Tampa Street Railway & Power Company; that the Tampa Street Railway Company was purchased by the Tampa Street Railway & Power Company for $100,000, $50,-000 of which was paid in cash and $50,000 in first-mortgage bonds, and "that the Electric Light Company was sold for $100,000, on which there was an issue of bonds of one hundred thousand dollars to secure the same; that there has been no additional improvement in the plant or equipment of either company since said date; that the aggregate value of the property of the Tampa Street Railway & Power Company does not exceed its cost, and there is an outstanding issue of $200,000 in bonds against said company, and affiant is informed and believes said company is endeavoring to float an additional $200,000 in bonds; that the fixed expenses, at present, of said company, exceed the gross earnings in the sum of $5,000; and that the Tampa Street Railway & Power Company is insolvent."

An affidavit of George B. Cartwright, auditor of the appellant company, has been filed, and in it he states that he is acquainted with the financial condition of said company, and that it is in every respect solvent, and its gross earnings are now, and have been since its organization, much in excess of the fixed expenses and outlays properly chargeable to the expense account; that the appellant company was not formed by a consolidation or sale of the Tampa Street Railway Company and the Tampa Electric Light & Power Company,

as stated in the affidavit of E. S. Douglass, and since the formation of the appellant company several substantial improvements have been made in its plant and equipment, including the laying of more than three quarters of a mile of new and additional track for the use of its railway ; that, upon information derived from the officials of said company, affiant believes and states that all the bonds of said company which have been floated, except those issued in payment of the purchase price of its plant, have been floated for the purpose of making permanent improvements in its plant, and especially for the introduction of electricity as a motive power upon its railways, and all of said money is now in its treasury, awaiting the selection of a suitable system for such use ; that affiant has been auditor for the appellant company since its formation, in June, 1892, and that the income from its business has always been more than sufficient to pay the interest upon the purchase price thereof ; and affiant has had occasion to become acquainted with the entire property of said company, and he verily believes that the value of said property, together with the franchise acquired therewith, is more than the amount paid therefor; that the largest stockholders of said company reside in the State of Pennsylvania, and are men of large means, and affiant is informed and believes that they are able and intend to supply all the capital necessary to meet the present and future needs of the city of Tampa in respect to street railway transportation and electric lighting, and it is their intention to invest at least $200,000, at as early a day as practica-

ble, in the extension of the use of electricity as a motive power on their said railway.

Inasmuch as it is not denied that the land described in the abstract is the same, in part, as that referred to in Ahern's affidavit, it may fairly be assumed that it is. If we cannot proceed upon this assumption, then we have no description from him of the real property he claims to own, nor does he give us any valuation of it. Referring to the property described in the abstract, the testimony of Beckwith is that it is not worth over $2,800, with a $400 mortgage on it. If we concede that the 40-acre lot, about which Seffner and Franz depose, is property of Ahern, situated in Florida, the highest valuation placed on it by either of them is $2,000. They do not speak as to the value of any other real estate. No assistance at all can be derived from the affidavit of E. P. Ahern, for the obvious reason that he does not state the property which he says his brother J. H. Ahern owns is situated in the State of Florida. He does not even pretend to say that it is worth $10,000, or that it, with the other real estate referred to, will equal in value this sum. As to personal property, Ahern says that he is the owner of $13,000 of bonds and $50,000 of stock of the Tampa Street Railway & Power Company. It may be that his justification as surety on the bond in question was based upon the ownership of these bonds and stock. The Tampa Street Railway & Power Company is a party to this suit, and appellant here. In view of the requirement of the statute that an appellant, in order

to secure a supersedeas, must give bond, with two good and sufficient obligors, for the amount thereof, a question may arise as to the sufficiency of a surety whose property consists entirely in bonds and stock of an appellant corporation. In the present case, however, the surety does not say that his bonds and stock are worth the amount of the bond, or any other amount. What the market value of the bonds and stock is, we do not know. It is not denied that there is an outstanding issue of $200,000 against said company, and the affidavits before us do not fix the value of the bonds or stock of said company. Mr. Ahern has not said what his bonds and stock are worth, nor does he even say whether or not his bonds are secured, or the order of their payment, as being first or second mortgage bonds. His sufficiency as a surety has been impeached by direct testimony, and the showing in his behalf, in that respect, is entirely unsatisfactory. Nowhere is it stated that the property which he owned at the time was of the value of $10,000, and what is stated in reference to his property is very vague and uncertain. The case, as to the surety, J. H. Ahern, comes within the rule in Hays vs. Todd, *supra*; and it was an imposition upon the court for this surety to represent, in his justification, that he was possessed of the requisite amount of property, when it appears that he was not. We are satisfied that, if the true condition of this surety had been disclosed to the judge, he

would not have accepted the bond. Whether or not the justification was made under a mistake on the part of the surety matters not as to its effect upon the supersedeas granted.

As to the other obligor, W. S. Walker, we think the evidence shows that he was possessed of sufficient property to authorize his going on the bond, but the statute requires two sureties on an appeal bond to operate as a supersedeas.

The language of the writ of error statute is that if the plaintiff in error "shall have filed a bond payable to the defendant, with two good and sufficient obligors, to be approved by the judge, or clerk of the court below," it shall operate as a supersedeas; the amount of the bond, and its conditions, of course, to be governed by the terms of the statute. Under this statute, one obligor is not sufficient. There must be two, and each must be worth the amount of the bond, independent of the financial condition of the appellant. This is the guaranty which the statute has given to the appellee in case of a supersedeas, and we are not authorized to dispense with it. The result is that the bond is not good, and the supersedeas will be vacated. The practice in such cases, established in the case of Hays vs. Todd, *supra*, is that the movants are entitled to an order setting aside the supersedeas, and the court will not, on their motion, without any action on part of appellant for this purpose, make any order in reference to new sureties.

The judgment of the court is that the supersedeas heretofore granted in this case be, and the same is, hereby vacated.