A. B. WINN AND J. D. CAY, CO-PARTNERS AS A. B. WINN & COMPANY, PLAINTIFFS IN ERROR, v. JAMES W. COGGINS, MARY J. COGGINS, S. M. COGGINS, ELIZABETH COGGINS, PERRY D. COGGINS, DELAND COGGINS, AND A. J. BOLAND AND EMILY E. BOLAND, HIS WIFE, DEFENDANTS IN ERROR.

1.  In an action of ejectment where the defendants are in possession of the lands in controversy the plaintiffs cannot recover unless they show title in themselves or prior actual possession of the lands and ouster.

2.  Under Chapter 142 of the Laws of Florida, approved January 8, 1848, adverse possession for the term of seven years was necessary to acquire a title by possession.

3.  Chapter 1271 of the Laws of Florida suspended on December 13, 1861, the operation of the statute of limitations under which title to lands by adverse possession could be acquired, and such suspension continued until 1872.

4. If a deed conveying lands purports to have been executed by an officer of court under a decree and it is sought to use the deed in evidence as title to the lands, the power or authority to make the deed must be shown unless waived.

5. Where the burden of proof is on the plaintiffs, and, on the issues made, the evidence is not legally sufficient to sustain a judgment for the plaintiffs, and a judgment is rendered for the defendants, the trial court is not justified in granting a new trial on the ground that the verdict is contrary to the evidence.

6. In an action of ejectment where the evidence shows that the ancestor through whom the plaintiffs claim title as heirs went into possession of the lands in controversy as a squatter and without claim of title in 1842 or 1843 and remained in possession until about 1863 or 1864, that such ancestor held possession of the lands under color of title from January, 1858, till he left the lands about 1863 or 1864, no title by adverse possession is shown, especially when the statute of limitations under which title by adverse possession for a period of seven .years could have been acquired, was suspended in 1861 and remained suspended until long after the possession .of the lands had been relinquished, there being no showing that the lands were thereafter occupied by the ancestor or the plaintiff, or·by any one for them.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Wakulla County.

The facts in the case are stated in the opinion of the court.

*Geo. B. Perkins, Geo. P. Raney* and *Jos. A. Edmondson,* for Plaintiffs in Error;

*Nat. R. Walker* and *W. C. Hodges,* for Defendants in Error.

WHITFIELD, J.: The defendants in error brought an action of ejectment on August 17, 1905, in the circuit court for Wakulla county against the plaintiffs in error to recover the possession of lots 47 and 48 of Hartsfield's survey, and lots 97 and 98 of Hopkins' survey, containing 1,440 acres, more or less, in Wakulla county, Florida, and for mesne profits. A plea of not guilty was entered. At the trial the jury rendered a verdict for the defendants. The court granted a motion for a new trial, the defendants excepted thereto and by writ of error bring the order granting a new trial here for review as authorized by Section 1267 of the Revised Statutes of 1892.

The evidence adduced at the trial was in substance as follows: A. J. Boland, for the plaintiffs, testified that James Coggins had a deed to the lands involved in this suit at the time of his death, that none of the heirs has possession of the original deeds made from John Beard, receiver of the Apalachicola Land Company, of the lands mentioned in this suit, that the deeds are not in their possession or control now, "they told me that they had searched for the deed, and I know they did search for I myself searched everywhere for the deed because I was interested in finding the deed." "All the plaintiffs to this suit are heirs of James Coggins who died several years ago intestate." Testifying further this witness said: James Coggins has been dead for 10 or 15 years; was married only once. His wife is dead. He left the following

children: James W. Coggins, S. M. Coggins and Perry D. Coggins, the boys, and three girls, Mary J. Coggins, Elizabeth Coggins and Emily Coggins, my wife."

Mathew D. Raker, for the plaintiffs, testified: "I knew James Coggins in his lifetime well. It was either in 1842 or '43 when James Coggins moved on these lands, but he did not get a title until several years afterwards, for nobody could get any titles in those days. People just squatted on the lands, and James Coggins was a squatter and squatted on these lands. He after many years got a deed to these lands according to my understanding. Almost everybody in this country got deeds to the lands they squatted on, when the lands were fixed so they could get deeds. I know I got my deed to the place I squatted on. When he (James Coggins) came to this county he squatted on these lands and cut down new ground, and built him a dwelling-house and farmed on the lands. He had about 25 acres in one field around his dwelling-house, and another field about a half-mile from the fields he kept under fence, and farmed on them the whole time he lived on them until he left which was sometime during the close of the (Civil) war. I don't recollect but it was either in 1863 or '64, to the best of my recollection. He got all his wood off the lands for his own use, and split all his rails on them for uses about the house and farm. Nobody but James Coggins ever made any fences around these lands, or built any houses on these lands. I heard that James Coggins had bargained to sell the lands to James Baggs, but my knowledge is Baggs never lived on the lands. I am certain that nobody ever did live and farm on the lands but James Coggins. James Coggins I am satisfied lived on these lands, altogether from the time

he first squatted on them, to the time he left 15 or 20 years."

A. D. Rayborn for the plaintiffs testified: "I knew James Coggins in his lifetime. I knew he never did live anywhere else except the place he moved from about the close of the war. I did not know the numbers of the land, but he lived across what is known as the Coggins branch, where his old field now stands which is all grown up. My father lived near by his place, and I played with his children. When James Coggins moved away my father moved into the house and stayed there two years, and moved away, when the place went down, and the houses and fences all went to pieces. Nobody to my knowledge ever lived on what was known as Coggins place but James Coggins and his family, and my father's family after Coggins left. There was a good dwelling-house on the place when my father moved on the place and a good fence, but after my father left the fence was soon burnt up or went to decay."

John S. Ferrell for the plaintiff testified: "As to the description of lots 47, 48 Hartsfield survey and 97 and 98 Hopkins survey of my own knowledge I cannot say, but I was always under the impression, and it was generally understood that James Coggins in his lifetime settled these lands. I knew James Coggins in his lifetime well. Long before the war James Coggins was living on this place and continued to live on the place and farm, until about the middle or close of the war, when he moved away. I am certain that nobody ever improved the lands but James Coggins, and not many years after Coggins left when the place went to ruin. I do know Baggs never lived on the Coggins lands. Old man Coggins had a very good house and a very good fence on about 25 acres. He had

another field a good way off from the house. He lived on these lands to my certain knowledge ten or fifteen years, he was living there long before the war, when I knew him, and continued to live on them till about the middle or last of the war, which was either in 1862 or 1863 or 1864, I cannot remember exactly the time."

William H. Walker for the plaintiffs testified: "I knew James Coggins, the father to the heirs of this suit all my life up to his death. I knew that he lived on and occupied lots No. 47, 48 Hartsfield survey for 20 years and 97 and 98 Hopkins survey. Nobody except James Coggins and his family ever did hold possession of these lands. I remember Mr. Rayborn living in the house a short time, a year may be or a little longer, after Mr. Coggins left, but Mr. Rayborn did not claim them. Baggs never lived on the lands, nor did anybody except James Coggins ever improve these lands. Coggins had a good substantial fence, to the best of my recollection, and a very good house dwelling and other buildings on these lands. I also know that he used the timber for rails and for other purposes needed on a farm. James Coggins was neighbor to me and my father all the time from the first of my knowledge, and I know that he was in quiet possession of these lots 47 & 48 for 15 or 20 years and perhaps longer. I assisted in making the survey long years ago, and by the old field notes and surveys, I know the lands well, and these are the lands that James Coggins lived on."

The plaintiffs then offered in evidence a certified copy of the record of a deed without warranty from John Beard, receiver of the Apalachicola Land Company, purporting to convey the lands in controversy to James Coggins bearing date January 28, 1858, "pursuant to a decree made at Tallahassee on the eleventh day of April, A. D. 1856, by

the Honorable J. W. Baker, judge of the circuit court of the middle circuit of Florida in chancery sitting." The copy of the deed was objected to by the defendants on the ground that the original is the best evidence. Before ruling on this objection the court permitted A. J. Boland for the plaintiffs to testify as follows: "I inquired of the plaintiffs as to whether the original deed was in their custody or control and they replied that it was not, and stated further that they had searched for it and could not find it." The defendants moved to strike this testimony on the ground that it is hearsay evidence. The motion was overruled and an exception taken by the defendants. The defendants then objected to the introduction of the deed on the further grounds: "(1) That there are no subscribing witnesses to the sealing of the deed or the certified copy thereof; (2) that the acknowledgment attached to the deed or certified copy thereof does not show that the deed was signed, sealed and delivered by the grantor; (3) that said acknowledgment does not show that the grantor in making the same appeared personally before the proper officer; (3a) that said acknowledgment does not show that such acknowledgment was made by John Beard in his capacity as receiver; (4) that the plaintiffs have not shown as a predicate to the admission of the deed the authority which John Beard, receiver, had to execute said deed; (5) that plaintiffs have not shown a valid decree of court authorizing Beard, as receiver, to execute said deed; (6) that it has not been shown that the title to the lands described in said deed was vested in the Apalachicola Land Company, or that said lands are described in said decree; (7) that the acknowledgment or certificate to said deed does not show that the person making the acknowledgment is the indi-

vidual. described in and who executed such instrument; (8) that there is no official seal of the officer before whom the acknowledgment was taken or by whom said certificate was made, affixed to said deed or certified copy thereof."

The court overruled all these grounds of objection to the certified copy of the record of the deed except the 4th and 5th, "and allowed a certified copy of said deed to be admitted in evidence to show color of title in James Coggins as a basis of adverse possession," to which ruling the defendants excepted.

The defendants then offered in evidence a warranty deed from Child Bros. to defendants dated February 2nd, 1905, and covering with other land lots 47, 48, 97, 98 *Hartsfield's Survey*. The reading of this deed in evidence was objected to by the plaintiffs on the ground that the defendants had not shown title in said Child Bros. or possession by them of the lands in controversy at the time of or prior to the execution thereof. The objection was sustained and the defendants excepted.

No further testimony was introduced and the judge then charged the jury as follows; which was excepted to as a whole by the defendants: "This is an action of ejectment brought by the plaintiffs to recover of the defendants the possession of the lands described in the declaration, *viz*: Lots 47 and 48 Hartsfield Survey, and Lots 97 and 98 Hopkins Survey. The defendants have filed a plea of not guilty which puts in issue the title to the land in controversy. The plaintiffs must recover upon the strength of their own title and not on the weakness of the defendants' titles. And the plaintiffs may recover on proof of prior possession as against one found in possession without title.

If you believe from a preponderance of the evidence that the plaintiffs are the heirs of James Coggins, deceased, and that the said James Coggins in his lifetime entered into the possession of the lands in controversy under a deed of conveyance from John Beard, receiver, and claimed title thereto and continued in the open, notorious, exclusive and actual possession of the same for seven years, then you should find for plaintiffs. If you find from a preponderance of the evidence that the plaintiffs are the heirs of James Coggins, deceased, and that the said James Coggins, deceased, in his lifetime had a prior possession or occupancy of the lands in controversy, and that such prior possession was open, notorious, exclusive and actual, then you should find for the plaintiffs."

Three charges requested by the defendants were severally refused, and the defendants excepted to each refusal. The verdict was for the defendants, and the refusals to give these charges are not involved in the motion for a new trial made by the plaintiffs upon the following grounds:

"(1). Because the verdict is contrary to the charge of the court given to the jury.

2nd. Because the verdict is contrary to the evidence, which clearly showed that the plaintiffs were entitled to the recovery by adverse possession held under color of title to Lots 47-48, Hartsfield's Survey, and Lots 97 and 98, Hopkins' Survey, embracing fourteen hundred and forty acres, more or less; that said evidence was made by documentary proof and oral testimony, showing the plaintiffs' claim of title and their right to recover possession of said lands, and said evidence remained uncontradicted throughout the entire trial.

3rd. Because there was no evidence shown to the court by the defendants, except to disapprove the extent of damages sued for in plaintiffs' declaration, which would not entitle the defendants and warrant the jury to find a verdict of not guilty, thereby defeating the rightful possession of the plaintiffs, according to all of the evidence showing rightful possession.

4th. Because the same is contrary to law given by the court governing the evidence in said cause.

5th. Upon the further ground that the court erred in sustaining the 4th and 5th objections offered to the introduction of plaintiffs' deed, to wit:

4th. That the plaintiffs have not shown as a predicate to the admission of the deed the authority which John Beard, the receiver, had to execute said deed.

5th. That the plaintiff has not shown the valid decree of court authorizing as receiver to execute said deed."

Upon this motion the court made the following order: "The above motion is hereby granted and defendants excepted to the same. Novb'r 9th, A. D. 1905."

This order granting a new trial is among the errors assigned.

The questions to be considered on this writ of error are those involved in the order granting the new trial. The declaration alleges that the defendants are in possession of the lands in controversy to which and plaintiffs claim title. The plea of not guilty admits the possession of the defendants and puts in issue the title. Section 1513 Rev. Stats. of 1892, Section 1968 Gen. Stats. of 1906.

In an action of ejectment, where the defendants are in possession of the lands in controversy, the plaintiffs cannot recover where they do not show title in themselves

or that they were in prior actual possession of the lands and were ousted by the defendants. See Harris v. Butler, 52 Fla. 253, 42 South. Rep. 186, and authorities cited. See also Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395.

Under Chapter 142 Laws of Florida approved January 8th, 1848, *adverse* possession for the term of seven years was necessary to acquire a title by possession. Hart v. Bostwick, 14 Fla. 162.

If a deed purports to have been executed by an officer of court under a decree and it is sought to use the deed in evidence, the power or authority to make the deed must be shown unless waived. Simmons v. Pratt, 20 Fla. 495; McGehee v. Wilkins, 31 Fla. 83, 12 South. Rep. 228.

Where the burden of proof is on the plaintiffs, and, on the issues made, the evidence is not legally sufficient to sustain a judgment for the plaintiffs, and a verdict is rendered for the defendants, the trial court is not justified in granting a new trial on the ground that the verdict is contrary to the evidence. Bishop v. Taylor, 41 Fla. 77, 25 South. Rep. 287; Philadelphia Underwriters Ins. Co. v. Bigelow, 48 Fla. 105, 37 South. Rep. 210.

The testimony without contradiction shows that the plaintiffs are the heirs of James Coggins, who died ten or fifteen years before this suit was brought; that James Coggins settled upon the lands in controversy as a squatter in 1842 or 1843, and remained in possession until about 1863 or 1864, when he moved away; that James Coggins built a dwelling and other houses and fences and farmed on a portion of the lands and used wood from other portions for house and farm purposes; that he received a deed from John Beard, receiver of the

22—S C

Apalachicola Land Company, conveying the land to him, dated January 28, 1858; that when James Coggins moved away about 1863 or 1864, a Mr. Rayborn moved with his family into the dwelling-house of the land, but did not claim the land, and after remaining there two years moved away, "when the place went to ruin," "and the houses and fences all went to pieces;" and there were no other improvements made on the land and no one else ever lived on the place. There is no testimony that James Coggins held possession of the lands under a claim of title or adversely to any one from the time of his entry as a squatter in 1842 or 1843 until he received the deed to the lands dated January 28, 1858. His possession after January 28, 1858, and continuously till he moved away about 1863 or 1864 may be deemed to have been adverse and under color of title.

Chapter 142, Acts of 1848, required adverse possession for a period of seven years. If James Coggins has held *adversely* for seven years between 1848 and 1858, the date of his deed from Beard, receiver, he would have acquired a title to the lands actually occupied; but no claim of title or adverse possession by him prior to 1858 is shown, therefore he acquired no title by possession unless it was done under the claim and color of title afforded by the deed dated January 28, 1858. James Coggins remained in possession of the land under claim of title and under color of title from January 28th, 1858, till he moved away about 1863 or 1864, and Mr. Rayborn then had some possession of the lands two years thereafter; but the statute of limitations under which a title by continuous adverse possession for seven years could have been acquired was suspended December 13, 1861, by Chapter 1271 Laws of Florida, and there was after this no statute in force under

which title could have been perfected by adverse possession till 1872, long after both James Coggins and Mr. Rayborn had moved from the lands. Bradford v. Shine, 13 Fla. 393; McDonald v. Bogue, 14 Fla. 363; Spencer v. McBridge, 14 Fla. 403; Wade v. Doyle, 17 Fla. 522; Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516. This being so no title by adverse possession could have matured in Coggins, and as there is no showing that James Coggins or the plaintiffs ever again took possession of the lands or any of them, it does not appear that the plaintiffs have title or had prior possession from which they could have been ousted by the defendants.

These facts and circumstances shown in evidence by the plaintiffs and not contradicted, are legally insufficient to sustain a verdict for the plaintiffs, and the jury should have found for the defendants as was done.

The introduction in evidence of the certified copy of the record of the deed of conveyance purporting to have been executed under a decree of court by John Beard, receiver, to James Coggins, was objected to on the ground that the authority to make the deed as receiver was not shown, and as no evidence of such authority was offered the certified copy of the record of the deed was very properly not admitted in evidence as title to the lands. In the trial of this cause the court could not take judicial knowledge of a decree rendered by the court of another county in another cause. See McNish v. State, 47 Fla. 69, 36 South. Rep. 176; 4 Wigmore on Ev., Sec. 2579.

As the verdict is the only one the jury could have properly rendered under the law as applied to the evidence, the plaintiffs cannot be heard to complain of the verdict on the ground that it is contrary to the charge of the

court, particularly when the charge was entirely favorable to the plaintiffs.

The order granting the new trial is reversed and the cause is remanded with directions to the circuit court to enter final judgment for the defendants upon the verdict, unless a motion in arrest of judgment, or for judgment *non obstante veredicto,* shall be made and prevail.

TAYLOR, COCKRELL, HOCKER and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., absent on account of sickness.