JOHN R. HOGANS ET AL., APPELLANTS, VS. GEORGE R. CAR-
RUTH, APPELLEE.

1. A plaintiff in ejectment cannot recover as against one having pos-
session without title by proving title in a third person.

2. Right to possession is an incident to legal title, and is good against
a naked possession unaccompanied by claim of title.

3. A defendant in possession will defeat a recovery by plaintiff by
showing title in another person.

4. Where the courses and distances in a deed do not cover the quantity
of land called for, and are therefore uncertain as boundaries, and
there are other boundaries given in the deed by adjoining tracts,
which are ascertained and sufficiently established, the lines will
be extended to them where such a course is consistent with the
manifest intention of the parties.

5. If, as to an ancient deed coming from the possession of the heirs of
the grantee, it appears that the names of one or more of the
grantors, who could not write, is in the hand-writing of a per-
son then present, and not a party to the deed or in interest, in
the absence of evidence of fraud, the presumption is that the
signatures were made in the presence of the parties by virtue of
an oral direction from them, in which event the signatures are
those of the parties as principals.

6. Proof of the hand-writing of witnesses to an ancient deed, they
being dead, the deed coming from the heirs of the grantee, and
having been spread upon the county records in regular order and
in due form, is sufficient proof of execution and delivery.

7. Under our statute the attestation of a deed in the words "bargained,
sold, transferred and acknowledged in presence of us," where the
*testificandum* clause is "in witness whereof the said parties of
the first part have hereunto set their hands and seals, the day
and year first above written," other facts showing delivery being
established, is sufficient.

Appeal from the Circuit Court for Duval county.
The facts of the case are stated in the opinion.

*C. P. Cooper & J. C. Cooper* and *C. L. Robinson* for Appellants.

*Cockrell & Walker* for Appellee.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an action of ejectment by appellants against appellee. Taking a general view of the appellants' case as developed by their testimony in this record and discussed in their briefs, it may be divided into two parts : First, a claim that the title was in their ancestors, and hence their right to recover; second, that the title was in the United States, or in Charles F. Smith, who claims through the State of Florida and the Trustees of some railroad Company. The second ground may be disposed of by simply stating that proof that the title is not in the plaintiffs but in somebody else, gives no claim to the land to the plaintiffs as against Carruth, even though he may be a mere squatter. It would be a strange rule indeed that would enable a party to dispossess another by proving title in a third person, thus making him a general trustee with legal title for every person having a right to the possession of lands held by all parties having no paper title thereto. In this aspect of the testimony the verdict of the jury was correct. We cannot think, however, that this defense was seriously insisted upon.

This case was before this court at January Term, A. D. 1882, [18 Fla., 587,] and by reference to the opinion rendered therein granting a new trial, a statement of the facts of the case, so far as necessary to disclose the principles of law upon which each party relied, is concerned, will be found.

Plaintiffs, Hogans' heirs and heirs of Purnal Taylor,

sought to prove legal title in themselves, claiming the right to possession incident to legal title. Defendant, while not endeavoring to establish adverse possession under color or claim of title sufficient to limit the action and thus defeat plaintiffs' right of action against him, relied upon his possession and the fact which he asserted that the legal title of plaintiffs' ancestors had passed from them to Isaiah D. Hart, and as a consequence that the right of possession incident to legal title was in him or those claiming through him by descent or purchase. This is the question involved in this case, which case is here upon exceptions taken by plaintiffs upon the trial of the cause and upon motion for new trial, the verdict and judgment being against them in the Circuit Court.

It is thus apparent that it is admitted by appellants and appellee that the title of plaintiffs' ancestors was good. It also results necessarily that the only question here involved is, did the title pass from plaintiffs' ancestors. Ascertaining the nature of the title of plaintiffs' ancestors is therefore material to the determination of what passed to their ancestors' alleged grantee, Isaiah D. Hart. This title is as follows: Upon a hearing of Zachariah Hogans in behalf of himself and wife, late Maria Suarez, widow of Purnal Taylor, by the Commissioners appointed by the United States to ascertain claims and titles to lands in East Florida, the claimant produced in evidence "a title of absolute property from the Spanish authorities, dated September 13, 1816, to his wife as widow of Purnal Taylor, deceased, with a certified plat for two hundred acres of land, "and the claim was by said Commissioners confirmed *to him and his heirs.*" This plat which accompanies the memorial to the Commissioners was made by Don George I. T. Clark, Lieutenant of the local militia of St. Augustine, Florida,

and Surveyor-General appointed by the government of the said city and province. The grant as shown by this plat thus surveyed and confirmed is thus:

AMERICAN STATE PAPERS, FOURTH VOL., P. 171.

It is admitted by the plaintiffs and defendant that the lot in controversy here is embraced in this grant. It is distant from the river St. Johns in a direct line about four feet less than 44 chains, and is about 95 feet from the north line of the grant. This is the testimony of plaintiffs' witness, R. N. Ellis.

The deed by which defendant claims that plaintiffs' ancestors parted with their title is dated the 26th day of May, A. D. 1834. It is made by Lewis Z. Hogans and his wife, Maria, formerly Maria Taylor, and widow of Purnal Taylor, deceased, John Taylor, Charlotte Taylor and Purnal

Taylor, of Duval county, to Isaiah D. Hart. To the intro-
duction of this deed plaintiffs objected. Defendant proved
the death of the witnesses; that the signatures purporting
to be theirs was in their hand-writing; that what pur-
ported to be the signature of Lewis Z. Hogans was in his
hand-writing; that the signature of Maria Hogans was in
the hand-writing of James Dell, one of the subscribing wit-
nesses, and that the signatures of John, Charlotte and Pur-
nal Taylor were in the hand-writing of John Taylor; that
Charlotte and Purnal Taylor could not write, and that the
deed was in the hand-writing of I. D. Hart, the grantee.
The deed comes from the office of the Judge of the County
Court of Duval county, and the Judge of that court swears
that it, with a number of other ancient deeds, was brought
to him in an old chest by Mrs. O. B. Hart, the widow and
executor of O. B. Hart, who was the son of the grantee in
the deed, I. D. Hart. The Clerk of the Circuit Court for
Duval county swears that this deed with others named is
" spread upon the books " of his office " in regular order
and due form," and John R. Hogans, the son of Z. Hogans,
testifies that his mother had stated to him years ago when
he enquired concerning this land that she had given the pa-
pers concerning this land to Major Hart. I. D. Hart, the
grantee in this deed, is meant by Major Hart.

The concluding or testificandum clause of the deed is:
" In witness whereof the said parties of the first part have
hereunto set their hands and seals the day and year first
above written," and the seals appear upon the paper. The
attestation clause is " bargained, sold, transferred and ac-
knowledged in presents of us."

There was objection to the introduction of this deed, be-
cause the execution of the deed had not been sufficiently
proved; because it did not contain within its description
the lot in controversy; because the rights of Maria Hogans

were not conveyed by it, and because the signature of M. Hogans was in the hand-writing of James Dell, one of the witnesses, and the signatures of John, Charlotte and Purnal Taylor were in the hand-writing of John Taylor, and there was no proof of authority in Dell or Taylor to sign the names of these parties or their adoption of said signatures.

The concluding clause of this deed asserts the execution of the deed by these parties under their hands and seals, and seals appear opposite their names.

Whatever may be the rule as to deeds not ancient, yet in an ancient deed such as this, if it appears that the name of one or more of the parties is in the hand-writing of a person then present, and not a party to the deed or in interest, and that some of the parties could not write, and there is neither charge nor evidence of fraud, the presumption is that the signature was made in the presence of the parties by virtue of an oral direction from the parties themselves, in which event as a matter of course the signatures are those of the principals themselves. (Frost vs. Deering, 21 Maine, 156; Burns vs. Lynde, 6 Allen, 309, 310; Vidian vs. Griffin, 21 Cal., 392; Kinne vs. Brooks, 9 Ired., 219; McKay vs. Bloodgood, 9 John., 285.) The signing and sealing are therefore sufficiently established. The deed comes from the custody of the widow and executrix of the will of the grantee's son, and this as to an ancient deed coupled with the testimony of John R. Hogans to the effect that his mother, Mary Hogans, delivered the title papers to this property to I. D. Hart, his mother being one of the parties to this and other deeds, as we subsequently will see, is sufficient to justify and require the introduction of this deed in evidence. Philips on Ev., Cow. & Hill's Notes, 4 Amer. Ed., p. 475 to 481, inc.

So far as the objection that it does not appear upon the

face of the deed here proposed to be introduced that the land in controversy is embraced in it is concerned, we held, when this case was here at last term, that a party is not required to locate on the ground the calls of a deed before it is admissible as evidence. In this case any legal evidence showing possession, claim or ownership of adjoining tracts were admissible.

As to the matter of the attestation of the deed, our statute does not require any particular form of words for the attestation clause of a deed, and the attestation clause of a deed in the words : " bargained, sold, transferred and acknowledged in presents of us," where the testificandum clause is : " in witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written," other facts showing delivery being established, is sufficient. The term " acknowledged " indicates that the parties affirmed the signing and sealing to be their act before these witnesses. As to the mistake in spelling the word presence, it is entirely immaterial, for " *mala grammatica non vitiat chartam*," and in a deed "*animus ad se omne ducit.*" (Walters vs. Bredin, 70 Penn. State, 235.) " The law fortunately is far from being strict in requiring any great accuracy or precision in respect to what is written so far as the rules of grammar or orthography are concerned, or as to the chirogaphy or evenness of the page or the straightness of the lines."

The description of the boundaries of the land conveyed by this deed is as follows : " All that certain tract, piece or parcel of land lying and being within the following boundaries, that is to say : bounded on the east by lands now claimed by John L. Doggett, on the north by lands claimed by the said party of the second part, on the west by lands of the parties of the first part, (it being part of the aforesaid tract) and on the south by St. Johns river, and

runs north forty chains, the second line runs west twenty-six and a half chains, the third line runs south forty chains, and the fourth line runs east twenty-six and a half chains to the point of beginning, containing one hundred and six acres, more or less, it being part of a tract of land granted by the Spanish government to the widow and heirs of the said Purnal Taylor, deceased, on the 13th September, A. D. 1816, and surveyed by George I. F. Clark, Surveyor-General, on the 21st day of February, A. D. 1817."

The question in this case is, does this deed embrace the lot in controversy? If it does, then plaintiffs must fail.

We have here two calls for boundary, the first being by the lands then claimed by certain parties, and the second being in chains without giving any starting or terminal point which can be ascertained without reference to owner-ship of adjoining lands as described in the prior part of the deed. The courses and distances enable us to denote on a plat a geometrical figure; that is all. The other descrip-tion tells us it is a part of the Hogans' Grant, and gives as the boundaries by land owned by adjoining proprietors. Certain deeds were introduced in evidence by the defendant to show what the boundaries were according to the descrip-tion of "lands claimed," or similar descriptions, to which the plaintiffs objected because the deeds did not contain the lot in controversy; because I. D. Hart, the grantor in one deed, acknowledged it before himself, and while the deed purported to be executed by him as administrator no power to sell was shown, and because proof of the execution was not sufficient.

As we remarked in the opinion delivered in a previous appeal in this case at a preceding term (18th Fla.) the ques-tion here is not one of absolute ownership, but of claim. Whether, therefore, the failure to show power in Hart to sell as administrator would defeat a recovery of the land

which he might claim under such a deed is not the question, nor does the void acknowledgment of the deed before himself affect the question.

As to the evidence of execution it is useless to repeat what we have said as to the proof of execution of deeds of this character. These deeds are ancient, and what has been already said upon this subject covers the questions here raised to the extent that we can reasonably conceive any importance is attached to them. These deeds were, therefore, properly admitted to show the boundaries according to description of ownership of contiguous lands.

\* indicates the lot in controversy.
A. B. C. D. indicates Hogans' Grant.
E. F. C. G. indicates area of deed of 1834 by metes and bounds in chains.
H. B. indicates northern boundary of deed of 1834 as given by lands claimed.
B. C. indicates like eastern boundary in deed of 1834.

The above plat shows the Hogans' Grant as given in the last survey, accepted and treated by the government of

the United States as authentic and official. It also shows the boundaries by abutting lands as given in the deed of 1834, made by plaintiffs' ancestors to Hart, the boundaries of the land emaraced in the deed made in 1836 by plaintiffs' ancestors to Hart, and the various other boundaries and points and matters indicated by the testimony, which the jury had a right to act upon in reaching their conclusion.

The northern boundary of deed of 1834 is lands of the parties of the first part (plaintiffs' ancestors), and the eastern boundary of deed of 1836 is land of Isaiah D. Hart; the northern boundary is land of I. D. Hart, the western land of John W. Richard.

According to the testimony, lot 1, block 136, the lot in controversy, was embraced in these boundaries. Speaking of this matter the witness, R. N. Ellis, a surveyor, says: "I would have to find the boundaries in deed of 1834 to get a starting point to make the survey of the land in that deed, and could not make a survey of the areas called for in that deed until I found this starting point." This witness says also: "I would say lot 1, block 136, was in the boundaries given in the deed from Hogans and others to Hart of 1834," according to the boundaries by contiguous lands given in the deed of 1834. To the same effect is the testimony F. F. L'Engle, a surveyor, who had surveyed the Hogans' Grant and was familiar with the proof as to ownership of adjacent lands. This witness states that he had surveyed the greater portion of the lines marked on a plat similar to the foregoing plat; that he had run the north and west lines of the Hogan's Grant, B. A. and A. D.; that he had run most of the eastern line, F. B. C., as near as he could run it according to abuttals in deed of 1834. The amount of land according to measurement is 106 acres, but he does not know where the starting point

of the land embraced in the deed of 1834 is, unless ended
by the previous part of the description in the deed of 1834,
and that he would have to find out where the adjoining
lands of Doggett or Bellamy were to get a starting point;
that he can ascertain this starting point; that he can run
the forty chains north easily, which would reach the N. E.
corner, F.; that he could then run the western line 26½
chains, then south forty chains " *into the St. Johns river;*"
that he could find the third line, E. G.; that the end of it
*is in the water*, and that " there is 106 acres of area within
the measurement, including the land and *some water.*" Thus
surveyed the western line would run " several hundred
feet " into the St. Johns river.

The testimony shows that if the first line of Hogans'
Grant is run from the southwest corner, the eastern line
falls short of the river about seven or eight chains.

It is thus apparent that the deed of 1834 does not con-
vey one hundred and six acres *of land* according to meas-
urement, commencing with the eastern line, as the western
line run forty chains, goes into the waters of the river
several hundred feet. It is also apparent that if the west-
ern boundary is made the point of beginning, and the line
is run north forty chains from the St. Johns river, that the
eastern line will fall short of the bank of the river the
same distance. These lines, the eastern and the western,
are the ones which occasion this contention.

There is very little that is definite and certain here ex-
cept that the lines as given do not embrace the quantity of
land stated, and the southern terminus of the western line run
forty chains is not the bank of the river St. Johns. The same
discrepancies exist as to the Hogans' Grant, for the lines,
as given in the original grant, do not make any allowance
for the meandering of the river, while the plat, according
to the original survey, shows it existed, and if the south-

ern portion of the western boundary (D.) is made the initial point of the survey, the terminal point according to measurement would fall several chains short of the point C.

When we look to the boundaries of the deed of 1834, however, as fixed by " lands claimed " and " lands owned " according to the deeds in evidence and the testimony, the lot, of which possession is sought in this suit, falls south of the northern boundary (lands claimed by I. D. Hart) about ninety-five feet, and the evidence leaves no reasonable doubt as to what is meant by the terms " lands claimed " or " lands owned." Two surveyors testify without qualification that accepting this description the lot was embraced in the deed of plaintiffs' ancestors of 1834 to I. D. Hart, and deeds under which claim or ownership were made are in evidence.

Another fact which should not escape attention here is, that plaintiffs' ancestors in 1836, two years after their deed of 1834, fixed by their deed of 1836 the western boundary of the deed of 1834, and that boundary is extended by that deed to the point H. as marked upon the plat. In the deed of 1836, (D. A. H. G.) which gives boundaries entirely by ownership or claim, (omitting courses and distances) the eastern boundary is given as the " lands of Isaiah D. Hart," and the western boundary is given also as lands of the party of the second part (Isaiah D. Hart). The necessary consequence following this deed of 1836 between plaintiffs' ancestors and I. D. Hart is, that they themselves make the western boundary of the land embraced in the deed of 1834 as they understood it extend so far north as to embrace this lot when the line is extended 26½ chains east, and the boundary of 26½ chains east is not questioned.

Again in 1851, Maria Hogans, in consideration of the sum of $25, conveys all of her dower interest in the entire Ho-

gans' Grant to I. D. Hart. It is a fair presumption that this deed was executed because of the want of formality in the other deeds executed by her during coveture to pass this interest, and it follows if this be true that her purpose in the other deeds was to convey her interest in the entire Hogans' Grant, and if so it would seem to indicate a like purpose upon the part of the other grantors to the deeds of 1834 and 1836.

These are the facts as the jury had a right to find. Did they in law justify a verdict for the defendant?

We understand the law to be that where the courses and distances in a deed do not cover the quantity of land called for, and are therefore uncertain as boundaries, and there are other boundaries given in the deed by adjoining tracts, which are ascertained and sufficiently established, the line will be extended to them, where such a course is consistent with the manifest intention of the parties. We do not propose to enter into any general discussion of the rules controlling in the matter of boundary. We confine ourselves to this case as we understand it from the testimony in the present record. Applying the rule of law as we have stated it to the facts here disclosed, we think the verdict of the jury and the judgment of the court are sustained by the evidence and the law.

We have not examined in this case the errors assigned in the order in which appellants presented them in argument. This record discloses a case in which no evidence so material that it should operate to change the verdict of the jury was improperly admitted or rejected during the trial, and according to the practice of this court if the evidence sustains the verdict, and the law as applicable to the facts clearly established sustains the judgment, the judgment must be affirmed. We regard this as a rule eminently conservative and salutary in its character, greatly

conducive to the speedy administration of justice and the settlement of legal controversy. It should, therefore, be strictly adhered to.

The judgment is affirmed.