EAST COAST LUMBER COMPANY, A CORPORATION, *Plaintiff in Error,* v. THE ELLIS-YOUNG COMPANY, A CORPORATION, *Defendant in Error.*

1. A questioned propounded to a witness as to whether or not he ever heard a certain named person state anything in reference to the ownership of certain lands is too broad and general, not being confined to any time or place or restricted in any way as to the admissions or statements as to which the witness is interrogated.

2. Where a question of a preliminary nature is propounded to a witness and it is objected to and the objection sustained and the record fails to show the asking of any other questions or any attempt to show by the witness the matters concerning which the preliminary question was propounded, and also fails to show that the trial court was advised as to the purpose for which such question was asked, an appellate court is not war-

East Coast Lumber Co. v. The Ellis-Young Co.—Syllabus.

ranted in declaring that error was committed in sustaining such objection.

3. Where one deed refers to another, or to a map or plan of a survey, for a description, the deed, map or plan becomes as much a part of the instrument making the reference as if actually copied into it. Where a deed refers to other instruments for a full description, the maxim, *id certum est quod certum reddi potest*, would apply.

4. Where a deed is offered and admitted in evidence which refers to other instruments for a description of the property conveyed thereby, it is incumbent upon the party offering and introducing such deed to follow it up with other evidence and connect it with the other instruments therein referred to, or such of them as might be necessary, to identify the lands sought to be conveyed.

5. Where a deed has the names of two persons written in the place where the names of subscribing witnesses are usually placed, and the words "In presence of" are written above the names of the two persons, this is a substantial and sufficient compliance with the statute as to the requirement by the statute of two subscribing witnesses.

6. A deed of the Trustees of the Internal Improvement Fund is *prima facie* evidence of title in the grantee, but such title may be overcome by a superior title.

7. Under the provisions of Chapter 3127, laws of 1879, conveyances of land by the Trustees of the Internal Improvement Fund were required to be attested by the seal of the Florida State Land Office, and the impression of said seal upon any deed purporting to have been made by such trustees "shall entitle the same to be recorded in the office appointed by law for the record of deeds in each and every county, and to be received in evidence in all the courts of this state." No subscribing witnesses were required to such conveyances, nor were such trustees required to affix their private seals thereto.

8. Recording officers in this state are not required to record official seals of public officers, and a certified copy of a deed duly recorded is not required to indicate the presence of such official seal thereon, in order to render the same admissable in evidence.

17

9. Where a certified copy of a deed is offered in evidence, a copy of the entire deed should be offered, and the certificate of the clerk thereto should so show, and the practice of omitting therefrom the description of other lands than those embraced in the controversy is dangerous and is disapproved, even though such omission might not under some circumstances render a copy of a deed so certified inadmissible in evidence.
(PARKILL, J., *dissenting in part*.)

This case was decided by Division A.

Writ of error to the Circuit Court for Duval County.

The facts of the case are stated in the opinion of the court.

*Axtell & Rinehart,* for plaintiff in error;

*Cooper & Cooper* and *E. J. L'Engle,* for defendant in error.

SHACKLEFORD, C. J.—The plaintiff in error, hereinafter called the plaintiff, brought an action against the defendant in error, hereinafter called the defendant, in the circuit court for Duval county, for the conversion of certain spirits of turpentine and rosin alleged to have been converted by the defendant, said property having been removed from certain described lands, which were situated in Baker county, Florida.

Three pleas were interposed by the defendant, not guilty, a denial of the title of the plaintiff to the property and the statute of limitations, upon which issue was joined and a trial had before a jury. We make no mention of the other pleadings in the way of motions, replications, rejoinders and demurrers for the reason that no point is made thereon, and it is sufficient simply to indicate the issues upon which the case was tried. Certain evidence offered by the plaintiff was excluded upon objection of the defendant, as well as certain evidence

of plaintiff previously admitted stricken out on motion, and, under an instruction of the court, the jury returned a verdict in favor of the defendant, upon which judgment was entered, which the plaintiff seeks to have reviewed here by writ of error.

Five errors are assigned, all of which are based upon the rejection of certain evidence proffered by plaintiff and the exclusion of certain evidence previously admitted. No evidence was adduced by the defendant.

The first assignment is as follows: "The court erred in sustaining defendant's objection to the question asked the witness, J. L. Williams, as to statements with reference to ownership of lands in question made by Carraway."

We find that W. E. Carraway is the person who is specified by the plaintiff in the bill of particulars, furnished at the instance of the defendant, with having taken and removed the spirits of turpentine and rosin from the lands of the plaintiff for the conversion of which the plaintiff seeks to recover damages from the defendant. J. L. Williams was the first witness introduced on behalf of the plaintiff. After the witness had testified, among other things, that the said Carraway was in the possession of certain lands in Baker county in the years 1896, 1897 and 1898, which the witness designates as certain named islands, swamps and sloughs, presumably the lands from which the turpentine and rosin are alleged to have been removed, though the testimony at that stage is not clear upon that point, boxing and turpentining the trees thereon, he was asked the following question by the plaintiff: "Mr. Williams, did you ever hear Mr. Carraway state anything in reference to the ownership of these lands?" All that the bill of exceptions discloses is that the defendant objected to the question, which objection was sustained and an exception duly noted to the ruling. We

are not advised as to what the grounds of the objection were.

Strictly speaking, the question as objected to was a preliminary one, as is admitted by both the plaintiff and the defendant in their briefs, and did not necessarily call for illegal or inadmissible testimony, and so far that reason might not have been objectionable. However, no such point is made before us, the plaintiff contending that it was preliminary to the asking of other questions "for the purpose of showing that Mr. Carraway while working on the lands in question admitted that he had no claim to their ownership." See Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities there cited. We are confined to what is disclosed by the record, and, as it does not show the asking of any other questions or any attempt to show by the witness any such admissions by Carraway, we are precluded from following the plaintiff in its discussion along this line. As we have already pointed out, the grounds of objection to the question are not set out, so it seems sufficient for us to say that even with the purpose which the plaintiff had in view, the question was certainly too broad, not being confined to any time or place or restricted to any admissions which Carraway may have made while in possession of the lands and engaged in turpentining them. In other words, the question so elaborately argued by the plaintiff is not before us for determination, and it becomes unnecessary for us to go into an examination of the cited authorities. Suffice it to say that no error is made to appear.

The second assignment is as follows: "The court erred in refusing to admit in evidence certified copy of deed from George Westinghouse, Jr., and wife to John Paul, dated January 15th, 1895."

The title of the plaintiff to the lands from which it

was claimed that the turpentine and rosin had been taken and removed having been put directly in issue by the pleadings, it became incumbent upon the plaintiff to prove its title, and the deed in question was offered as a link in the chain. Three objections were interposed which were as follows:

"(1) That the paper purporting to be a copy of the deed does not describe any particular land, but refers to other conveyances for descriptions of such lands, and, unless such other conveyances are introduced in evidence, it is immaterial and irrelevant.

(2) That the original was not executed in accordance with the law—in that the witnesses do not purport to attest the signing, sealing and delivering of the deed: the attestation clause, as to the witnesses, is wholly insufficient—the language being: 'In the presence of.' The original, therefore, has no subscribing witnesses within the meaning of the laws of Florida.

(3) And, on the further ground, that it is immaterial and irrelevant in this cause, because it is not connected with the original source of title to make a complete title upon which the plaintiff could recover."

The plaintiff informs us in its brief that the court, as a matter of fact, sustained the second ground of the objection, but admits that it would be necessary for it to show that none of the objections were well founded.

As to the first ground of objection, we find that no lands are specifically described in the deed in question, the description therein being as follows: "all their right, title and interest in and to all those certain lands situated, lying and being in the counties of Columbia, Nassau, Duval, Baker and Bradford, in the state of Florida, and described in a certain mortgage dated the 13th day of July, 1891, made by James L. Gates and Kittie M. Gates, his wife, to Albert L. Brown and William J. Riley, and

more particularly scheduled and described in a certain deed dated the 7th day of July, 1891, from the Florida Southern Railway Company, of said state of Florida, to said James L. Gates, with release to said Gates from the New England Trust Company, trustees, dated the 9th day of July, 1891, and from Joseph L. Parrott, receiver, dated 13th day of June, 1891, all executed in pursuance of a decree of the circuit court of the United States for the Northern District of Florida, dated the 8th day of June, 1891, which mortgage was recorded in the offices of the clerk of the circuit court of Duval county, on page 450 of book 'AN' on the 9th day of November, 1891, in the office of the clerk of the circuit court of Baker county on pages 253 to 255 in book 'B' on the 18th day of November, 1891, in the office of the clerk of the court of Nassau county on page 186 of book 'Z' of the public records on the 15th day of November, 1891 ; in the office of the clerk of the circuit court of Columbia county, on pages 387 to 389, in mortgage book 'I' on the 14th day of November, 1891 ; and in the office of the clerk of the circuit court of Bradford county, in book 'H' of mortgages, on page 253 of the public records, on the 12th day of November, 1891, which lands are particularly described in a bill of complaint in an action to foreclose the said mortgage, in which action the said George Westinghouse, Jr., is plaintiff, and James L. Gates, Kittie M. Gates, the International Land Company, et al., are defendants, instituted in the circuit court of Duval county, where a part of said land is situated, which suit has proceeded to a decree of foreclosure and sale, dated the 27th day of September, 1894, and thereafter on or about the 3rd day of December, 1894, proceeded to a sale of the lands described in the said mortgage and in the bill of complaint in said suit, and in said decree, at which sale the said George Westinghouse, Jr., bid in the said lands."

It is settled law here that "where one deed refers to another, or to a map or plan of a survey, for a description, the deed, map or plan referred to becomes as much a part of the instrument making the reference as if actually copied into it." Andreu v. Watkins, 26 Fla. 390, 7 South. Rep. 876, and authorities there cited.  Also see Sanders v. Ransom, 37 Fla. 457, 20 South. Rep. 530; 13 Cyc. 548; Maupin's Marketable Title to Real Estate (2nd ed.) 52; Phelps v. Phelps, 17 Md. 120; Glover v. Shields, 32 Barb. (N. Y.) 374; Johnstone v. Scott, 11 Mich. 232; United States Blowpipe Co. v. Spencer, 46 West Va. 590, 33 S. E. Rep. 342; Lieberman v. Clark, 114 Tenn. 117, 85 S. W. Rep. 258, S. C. 69 L. R. A. 732, cited as Wheeler v. Clark; Nelson v. Brodhack, 44 Mo. 596, S. C. 100 Am. Dec. 328; Newman v. Thompson, 13 Wis. 172, 80 Am. Dec. 735, and note on page 738. As the deed contains express reference to other instruments for a full description, the maxim, *id certum est quod certum reddi potest,* would apply.  We have frequently applied this principle to descriptions in deeds.  See Walker v. Lee, 51 Fla. 360, 40 South. Rep. 881, and former decisions of this court there cited.  Of course, with such a description as was in the deed in question, it was incumbent upon the plaintiff to follow it up and connect it with the other instruments therein referred to, or such of them as might be necessary, to identify the lands sought to be conveyed.  In the event the plaintiff should fail to do this, the proper course for the defendant to pursue is pointed out in Walker v. Lee, *supra,* and Pittman v. State, 51 Fla. 94, 41 South. Rep. 385, S. C., 8 L. R. A. (N. S.) 509.  As a matter of fact, it may be well enough to state that the record discloses that some of the instruments referred to in the deed in question were offered by the plaintiff and admitted in evidence without objection upon the part of the defendant, even if objections

existed thereto, as to which we are not called upon to express any opinion in the consideration of this ground of objection. From what we have said this ground of objection must be held to be without force, and we now pass to the second ground.

This ground, which we have copied in full above, was based upon the attestation clause as to the witnesses. Upon referring to the copy of the deed in the transcript, we find the following:

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

Margaret Erskine W. Westinghouse L. S.

Geo. Westinghouse, Jr.          L.S.

In presence of:

Paul D. Craveth.

L. C. Carvanna.

      As to Geo. Westinghouse

Victor K. McElhaney.

Gilman M. Tague.

      As to Margaret Erskine W. Westinghouse."

No attack was made on the acknowledgment of the deed by either of the grantors, which deed had been recorded in the public record of Baker county. It was contended by the defendant "that the witnesses do not purport to attest the signing, sealing and delivering of the deed," therefore, it has no subscribing witnesses as required by the laws of Florida. Is this conclusion well founded? In Smith v. Philips and Evans, 51 Fla. 327. 41 South. Rep. 527, in speaking of the form prescribed by statute for the execution of tax deeds, we held that "substantial compliance only is required by statute," and that "done in the presence of," instead of the statutory words, "signed and sealed in presence of," followed by

the signatures of two witnesses, was a sufficient compliance with such statutory requirement.' In Richbourg v. Rose, 53 Fla. 173, 44 South. Rep. 69, we held that "As to the matter of the attestation of a deed, our statute does not require any particular form of words for the attestation clause of a deed. The phrase commonly used in this state to denote that the persons signing are witnesses is, 'signed, sealed and delivered in the presence of;' but any phrase which clearly denotes that the persons signing were witnesses will be valid." We further held therein that "where a deed has the names of two persons written in the place where the names of subscribing witnesses are usually placed, and the letters 'Wit.' are written above the names of the two persons, and where the testificandum clause is, 'In witness whereof we have hereunto set our hands and seals this the 4th day of May, 1903,' other facts showing delivery, the attestation of the deed is sufficient." We would also refer to the reasoning and the authorities cited therein. We also call attention to the fact that no objection was urged against the admissibility of the deed because a certified copy was offered instead of the original, the absence of which original had not been accounted for. As we have also stated that the deed had been recorded in the public records of Baker county, and there is no ground of objection that it was not entitled to record and, therefore, that a certified copy thereof was not admissible under the provisions of section 21 of Article XVI of the state constitution of 1885. The law as to the execution of deeds in force at the time the deed in question was made is found in section 1950 of the Revised Statutes of 1892, which provides: "No estate or interest of freehold * · * * shall be created, made, granted, transferred or released in any other manner than by deed in writing, signed, sealed and delivered in the presence of at least two subscribing witnesses," etc.

In the light of the cited authorities, we must hold that the deed in question shows, at least *prima facie*, a substantial compliance with this statute, and was admissible in evidence as against this ground of objection as framed, hence such ground must fail. The following additional authorities may also prove instructive upon this point: Bradley Fertilizer Co. v. Pace, 26 C. C. A. 198, 80 Fed. Rep. 682; Ladd v. Ladd, 8 How. (U. S.) 10; Hogens v. Carruth, 19 Fla. 84, text 90.

The third ground of objection, as is said by the defendant in its brief, "was that this deed was not connected with the chain of title." No extended discussion of this ground is necessary, as we have already practically disposed of it in our consideration of the second ground. At best, this ground of objection was only conditional.

It follows that this error is well assigned and that the court erred in refusing to admit the copy of the deed in evidence as against the grounds of objection urged.

We now come to the third assignment, which is as follows: "The court erred in refusing to admit in evidence certified copy of deed from trustees of the Internal Improvement Fund to the Florida Southern Railway Company, dated the 13th day of May, 1885."

To the introduction of this instrument in evidence the defendant interposed the following grounds of objection:

"(1) That the deed is immaterial and irrelevant, not being connected with the original source of title on the one hand, nor connected with the parties in this suit on the other:

(2) The deed has no witnesses, and does not purport to have the official seal of the office of the commissioner of lands and immigration, being the official seal of the public land office of this state, and, therefore, the signatures must be attached by the witnesses:

(3) That the said deed was never acknowledged for record, nor does it appear to have attached, or that the original had thereon, an impression of the seal of the commissioner of lands and immigration, being the seal of the public land office of the state, as required by law, to authorize its record:

(4) The certificate of the clerk of the court shows that it is not a true and correct copy of the entire deed, but it purports to certify as to such copy, except as to certain lands omitted therefrom, and there is no authority of law for such a certificate:

(5) That it doesn't appear from the said copy when the original was recorded."

The fourth assignment is as follows: "The court erred in refusing to admit in evidence certified copy of a deed from the trustees of the Internal Improvement Fund to the Florida Southern Railway Company, dated the 21st day of May, 1883."

To the introduction of this instrument in evidence the defendant interposed the following grounds of objection:

"(1) That the said deed is immaterial and irrelevant, not being connected with the original source of title on the one hand, nor connected with the parties to this suit on the other;

(2) The defendants object to its introduction on the ground that the original was never acknowledged for record and is not entitled to record;

(3) That the said copy doesn't show that the original had thereon the impression of the official seal of the commissioner of lands and immigration;

(4) That the attestation of the witnesses is insufficient;

(5) and, That the certificate of the clerk of the court shows that it is not a true and correct copy of the entire

deed, but purports to certify as to such copy, except as to certain lands omitted therefrom, and there is no authortiy of law for such a certificate."

We shall take up these grounds of objection in their order. As to the first contention that these deeds were "immaterial and irrelevant, not being connected with the original source of title on the one hand, nor connected with the parties to this suit on the other," it is sufficient to say that this might be well founded if the court had correctly excluded the Westinghouse deed, but, as we have already seen in discussing the second assignment, the court erred in so doing. With the Westinghouse deed admitted in evidence, these deeds would have been directly connected with the plaintiff's chain of title and constituted essential links therein, and, as such deeds were from the trustees of the Internal Improvement Fund, they constituted *prima facie* evidence of title in the grantee. See Grover v. Coffee, 19 Fla. 61. This ground of objection is not tenable.

The grounds of objection that the certified copies of the respective deeds have no witnesses, or that the attestation of the witnesses thereto is insufficient, that they were never acknowledged for record and therefore not entitled to record, and that they fail to show that the originals had thereon the impression of the official seal of the commissioner of lands and immigration, may be disposed of without any extended discussion. We find that the testificandum clause of each deed is as follows: "In testimony whereof, the said trustees have hereunto subscribed their names and affixed their seals and have caused the seal of the Florida state land office to be hereunto affixed at the capitol," etc. In the deed under date of the 13th day of May, 1885, a scrawl or seal appears after the name of each one of the trustees signing it, except that of the commissioner of

lands and immigration, and in the deed under date of the 21st day of May, 1883, a seal or scrawl appears after the name of every trustee signing it. The first mentioned deed has no subscribing witnesses thereto and the second has the names of the two subscribing witnesses thereto after the words, "In the presence of." Neither deed has any acknowledgment thereto. The law in force at the time of the execution of these two deeds was chapter 3127, laws of 1879, found as section 17 on page 190 of McClellan's Digest. In substance, it provides that conveyances of land by the trustees of the Internal Improvement Fund, etc., "shall be attested by the seal of the Florida state land office," and the impression of said seal upon any deed purporting to have been made by such trustees "shall entitle the same to be recorded in the office appointed by law for the record of deeds in each and every county, and to be received in evidence in all the courts of this state." It would seem that no subscribing witnesses were required to such conveyances and that neither were such trustees required to affix their private seals. Even if such private seals were required, the commissioner of lands and immigration would be presumed to have adopted seals already there. Cotten v. Williams, 1 Fla. 37; Bacon v. Green, 36 Fla. 313, 18 South. Rep. 866; Somers v. The Florida Pebble Phosphate Co., 50 Fla. 275, 39 South. Rep. 61. As recording officers are not required to record official seals of public officers, a certified copy of a deed duly recorded is not required to indicate the presence of such official seal thereon. See Summer v. Mitchell, 29 Fla. 179, 10 South. Rep. 562, S. C. 30 Am. St. Rep. 106, 14 L. R. A. 815, and authorities therein cited. These grounds of objection must fail.

We now come to the remaining ground of objection of which the defendant says in its brief that "the most important objection to these so-called certified copies of

deeds is that the certificate of the clerk of the court does not show the copy to be a true and correct copy of the entire deed." We copy in full the certificate to the first deed, the certificate to the second deed having the same alleged defects therein.

STATE OF FLORIDA,
COUNTY OF BAKER.

I, T. C. Carroll, clerk of the circuit court in and for the aforesaid county and state, do hereby certify that the above pages numbered from 1 to 4, inclusive, contain a true and correct copy of the original deed as the same appears of record in deed book 'C' at page 214, one of the records of my office, except as to the description of certain lands omitted therefrom, the same being a true and correct copy of the original in so far as the same relate to the lands therein described.

In witness whereof, I have hereunto set my hand and affixed the seal of our said court, this 17th day of November, A. D. 1906.
(Seal Circuit Court)                          T. C. Carroll,
(Baker County, Florida)        Clerk of the Circut Court
in and for Baker County, Florida."

It is contended that copies of the entire deeds should have been offered and that the certificate of the clerk should have been to each instrument as an entirety.

On an examination of such copies, we find that each contains a description of certain lands from which the property alleged to have been converted was alleged to have been taken. After the description in the first deed, the words, "other descriptions contained herein omitted," appear in parentheses, then comes the following, "containing in the aggregate fifty thousand nine hundred and fifty-three acres and forty-five hundredths of an acre, lying and being in the county of Baker, in the state of

Florida." Like words follow after the description in the second deed.

The question we are called upon to answer is, did the fact of the omission of certain other lands described in said deeds from the certified copies thereof, as shown by the clerk's certificates, render such copies inadmissible in evidence as against the ground of objection urged?

We are not advised upon what ground of objection the trial court rejected the proffered deeds, as the record simply shows that "the said judge did then and there decide that the said objections should be sustained and refused to admit the said paper in evidence." Before rejecting these deeds, the trial court had rejected the Westinghouse deed, constituting an indispensable link in the plaintiff's title, in effect throwing it out of court, as we have already seen and found that the court erred in so doing.

The other grounds of objection to the introduction in evidence of the deeds in question were strenuously insisted upon here and presumably were likewise insisted upon in the trial court. Such other grounds apply with equal force to a complete copy, and which if properly sustained would reject a perfect copy of the entire deed, which grounds of objection could not be overcome by better evidence. It is true that we have examined and held untenable such other grounds of objection, and it may well be, as the defendant contends, that this is the most important ground of objection urged, but, as we have said, we cannot tell upon what particular ground or grounds the ruling of the trial court was based. In view of the fact that it would have required the expenditure of only a few dollars by the plaintiff to have procured and offered perfect copies of such deeds, we feel justified in assuming that the deeds were rejected upon some of the other grounds urged, rather than upon this ground

which could have been so easily remedied. We feel strengthened in this assumption for the reason that if the trial court had announced that its ruling was based upon this ground the plaintiff could have applied for a postponement or continuance of the trial until he could have obtained perfect copies of such deeds, or, failing in that, could have taken a nonsuit. While we feel reasonably sure, from an inspection of the copies of the deeds as offered and of the clerk's certificates thereto that in the instant case no harm would have resulted in their admission and the acceptance of such partial copies, yet we can readily see grave danger in recognizing such practice and will not give our sanction or approval. The rule of construction expressed in the well-known maxim *de non apparentibus et non existentibus eadem est ratio,* is hardly applicable here, for the reason that it is made to appear that the "copies offered were only partial, not complete, copies of the deeds as recorded. We shall not undertake to discuss or decide the exact point which would be presented if the ruling of the court had been based upon this ground of objection. Suffice it to say that there seems to be a paucity as well as a division of the authorities thereon. We again express our disapproval of such practice.

We now come to the fifth and last assignment, which is as follows: "The court erred in granting defendant's motion to exclude from evidence deeds already filed in evidence as follows: From John Paul and wife to the East Coast Lumber Company, from Henry C. Goodell to George Westinghouse, Jr., and from Florida Southern Railway Company to James L. Gates."

This motion was based upon the ground that such deeds were immaterial and irrelevant, because not "connected with any original source of title or any other

person who could convey title and the title has not been established."

If the court had not previously excluded the Westinghouse deed, which we found in discussing the second assignment was erroneously done, there would have been no sufficient basis for this motion, hence it follows that this assignment must be sustained also.

No comment from us as to the sufficiency of the evidence to establish the plaintiff's case would be proper. It is obvious that the erroneous rulings of the court in excluding evidence offered by the plaintiff to establish its title caused such breaks in the plaintiff's chain as to prevent a recovery and to hender the introduction of further evidence as to the alleged conversion nugatory.

It follows that the judgment must be reversed and a new trial awarded, and it is so ordered.

COCKRELL and WHITFIELD, JJ., concur;

TAYLOR and HOCKER, JJ., concur in the opinion.

PARKHILL, J., (*dissenting.*)—I do not concur in the conclusions reached by the chief justice upon the third and fourth assignments of error I do not think the court erred in refusing to admit in evidence certified copies of deeds from trustees of the Internal Improvement Fund to the Florida Railway Company, dated the 13th day of May, 1885, and the 21st day of May, 1883. To the introduction of each of these deeds the defendant interposed the following objection: "The certificate of the clerk of the court shows that it is not a true and correct copy of the entire deed, but it purports to certify as to such copy, except as to certain lands omitted therefrom, and there is no authority of law for such a certificate." To authorize the introduction of these so-called certified copies of

18

deeds, the certificate of the clerk should show the copy to be a true and correct copy of the entire deed to which it is appended.

Section 1520 of the general statutes of 1906, provides that: "In all cases where *any record, pleading, document, deed, conveyance, paper* or *instrument of writing* is, or may be required or authorized to be made or filed or recorded in any public office of this state, or of any county thereof, *a copy thereof* duly certified under the hand and seal of office * * * to be a *true* and *correct copy of the original* on file or of record in his office, shall in all cases and in all courts and places be admitted and received in evidence with the like force and effect as the original thereof might be."

The so-called certified copies offered in evidence here are not, and do not purport to be, certified copies of deeds, but they are certified copies of a portion of the deeds. The statute authorizes the introduction in evidence of "a copy"—a copy thereof duly certified *** to be a true and correct copy of the original." To authorize the paper to be introduced in evidence it must be *a copy,* certified to be *a true copy, a correct copy.* The word copy means, not a reproduction of only a portion of the thing copied, but the whole of it. 2 Words and Phrases, 1595; 7 Am. & Eng. Ency. Law (2nd ed.) 507, note 1; Edmiston v. Schwartz, 13 Sert. & R. (Pa.) 135; Updergraff v. Perry, 4 Pa. St. 291.

The words *true* and *correct* transcript has been held to be equivalent to *full* and *complete* transcript. Butler v. Owen, 7 Ark. 369. See, also, 28 Am. & Eng. Ency. Law (2nd ed.) 741.

The certificate before us recites, "the same being a true and correct copy of the original in so far as the same relate to the lands therein described." In Bellamy v. Hawkins, 17 Fla. 750, text 757, this court said, "It is

a well-established rule of evidence that when a document or record, or copy of it, is offered, the entire record of the cause or transaction must, if possible, be produced, or the *certified copy must contain, or purport to contain, a copy of the entire record* of the same cause or transaction; and that a *copy of a part,* or of an extract therefrom, is not received in evidence. A certificate by the custodian of a record that a paper offered contains a copy of *all that may be material* to the case on trial is not evidence of that fact, the court before whom the trial is had being the proper judge of the materiality of the contents of the paper or record, and of the bearing of each part upon every other part; and the custodian of the record can not determine the question by a certificate annexed to a *partial copy.*"

I have italicized the words in the above quotation to call attention to the aptness of the language as applied to the so-called certificate before us. The certificate before us is not a copy of the *entire record.* It is a copy of a *part* of the record. The certificate that the paper is "a true and correct copy of the original in so far as the same relates to the lands therein described," is not evidence of that fact, the court before whom the trial was had being the proper judge of the materiality of the contents of the paper and of the bearing of each part upon every other part. The clerk of the court cannot determine the question by a certificate annexed to a *partial copy.*

To permit a certificate of a partial copy of a deed in evidence will permit a partial copy of "any record, pleading, document, conveyance, paper or instrument of writing" recorded in a public office of this state; for the statute we are now construing applies to all these writings.

In my opinion, this court has no right to pass over this objection to the introduction of the proffered deeds,

as has been done here.  It will not do to say, "we are not advised upon what ground of objection the trial court rejected the proffered deeds."  It will not do to say, "In view of the fact that it would have required the expenditure of only a few dollars by the plaintiff to have procured and offered perfect copies of such deeds, we feel justified in assuming that the deeds were rejected upon some of the other grounds urged rather than upon this ground which could be so easily remedied."  Where there are several grounds of objection made to the introduction of the deeds and one ground is good and sufficient, the court committed no error in excluding the deeds.  An appellate court "does not sit to correct errors into which a party or his counsel may have fallen, but only those committed by the court."  Hospes v. Almstedt, 83. Mo. 473.  Any other course will involve us in a labyrinth of discretionary action, and result in great uncertainty and confusion in the administration of the law.